345 P.3d 125

**ALICE M., Appellant,**

v.

**DEPARTMENT OF CHILD SAFETY,[1] R.M., Appellees.**

**No. 1 CA–JV 14–0146.**

Court of Appeals of Arizona, Division 1.

March 10, 2015.

---

1. Pursuant to S.B. 1001, Section 157, 51st Leg., 2nd Spec. Sess. (Ariz.2014) (enacted), the Arizona Department of Child Safety (DCS) is substituted for the Arizona Department of Economic

Security in this matter. *See* ARCAP 27. For ease of reference, we refer to DCS throughout this decision.

Criss Candelaria Law Office, PC, By Criss E. Candelaria, Pinetop, Counsel for Appellant.

Arizona Attorney General's Office, By Amanda L. Adams, Mesa, Counsel for Appellee Department of Child Safety.

Judge PATRICIA A. OROZCO delivered the opinion of the Court, in which Presiding Judge SAMUEL A. THUMMA and Judge MICHAEL J. BROWN joined.

## OPINION

OROZCO, Judge:

¶1 Alice M. (Mother) appeals from the juvenile court order terminating her parental rights to R.M. (Child), arguing that the juvenile court erred by admitting certain evidence at trial. For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2 Mother endured many years of abuse from her husband, who is also Child's father (Father). Child was exposed to this abuse repeatedly as Mother engaged in a pattern of fleeing from and then returning to Father. In 2012, Mother reported to law enforcement that Father would "punish" her, which included deprivation of food and water, being locked in a "cellar," and not being allowed to use the restroom. Child also reported being "punished" with Mother in similar ways. Mother later testified that she lied to law enforcement about Father's abuse because she had "mental issues."

¶3 DCS became involved after Mother's 2012 report of abuse. Child, who was thirteen years old, told DCS caseworkers that he was afraid of Father and did not want to go home. Child was found dependent and placed in foster care, and a reunification case plan was adopted. Approximately one year later, DCS moved to terminate Mother and Father's parental rights.

¶4 At trial, DCS caseworkers who worked with Mother and Child testified that Mother failed to make sufficient efforts to remedy the circumstances causing Child's foster care

placement. Caseworkers further testified that Mother: lived in various places and did not always communicate with DCS about where or with whom she was living; failed to show she was capable of maintaining employment or providing stable living arrangements for herself and Child; remained in contact with Father, including arranging a secret meeting to obtain items from the marital home; and acted deceptively about her continued contact with Father. Although no order legally prevented Mother from having contact with Father, the caseworkers testified that Mother's continued contact with Father indicated that she was unwilling to fully separate from Father, even to protect Child. The caseworkers also testified regarding Mother's two psychological evaluations, both of which suggested a particularly strong dependence on Father.

¶ 5 Through her own testimony, Mother admitted that she: did not always communicate with DCS about her living arrangements; struggled to obtain and keep employment; and had met with Father at least once since the 2012 incident that led to Child's foster care placement. She also testified that she had lied to police about the extent of Father's abuse, as well as to the psychologists performing her psychological examinations.

¶ 6 The juvenile court terminated Mother's parental rights[2] after concluding: (1) clear and convincing evidence showed Mother neglected or failed to protect Child from neglect under Arizona Revised Statutes (A.R.S.) section 8–533.B.2; (2) clear and convincing evidence showed Child was in a foster care placement for nine months or longer and Mother had substantially neglected or willfully refused to remedy the circumstances causing the placement under A.R.S. § 8–533.B.8.(a); and (3) a preponderance of evidence showed terminating Mother's rights was in Child's best interests. This timely appeal followed. We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and A.R.S §§ 8–235.A., 12–120.21.A.1, and –2101.A (West 2015).[3]

## DISCUSSION

¶ 7 Mother contends the juvenile court erred by admitting over her objections the reports of her psychological evaluations, DCS caseworker reports, and police reports of the 2012 incident resulting in Child's foster care placement. Mother asserts that the Arizona Rules of Evidence and the Arizona Rules of Procedure for Juvenile Court preclude these documents from being admitted in evidence unless the author(s) are made available for cross examination or the documents fall under a recognized hearsay exception. We review evidentiary rulings for an abuse of discretion. *Kimu P. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 39, 42, ¶ 11, 178 P.3d 511, 514 (App.2008). The interpretation and application of procedural rules, however, are issues of law we review de novo. *Xavier R. v. Joseph R.*, 230 Ariz. 96, 98, ¶ 3, 280 P.3d 640, 642 (App.2012).

¶ 8 Juvenile Rule 44.B.2.e requires that a party intending to introduce exhibits into evidence at a juvenile proceeding disclose a list of exhibits and provide copies to any opposing party. An opposing party has ten days from receipt of the list to file a notice of any objection to such exhibits that contains the specific grounds for each objection. *Id.* Any objection "not identified in the notice of objection shall be deemed waived, unless otherwise ordered by the court." *Id.* This rule applies to termination proceedings as well as dependency proceedings. Ariz. R.P. Juv. Ct. 44.D.2.

¶ 9 Here, DCS filed a timely disclosure statement before trial that listed each exhibit Mother now claims was admitted improperly. The disclosure noted that a copy was sent to Mother's counsel at the address listed on counsel's notice of appearance and Mother does not assert DCS failed to disclose the evidence or provide her with the disclosure statement. Mother did not file a notice of objection, and, as a result, her objections are precluded under the plain language of Juve-

2. Father's parental rights were also terminated in this proceeding, but he is not a party to this appeal.

3. We cite the current version of applicable statutes when no revisions material to this decision have since occurred.

nile Rule 44.B.2.e. *See Fragoso v. Fell,* 210 Ariz. 427, 430, ¶ 7, 111 P.3d 1027, 1030 (App. 2005) (noting that procedural rules are interpreted in the same manner as statutes, and if a rule's language "is clear and unambiguous, we give effect to that language and do not employ other methods of statutory construction.").

 ¶ 10 Mother relies on Juvenile Rule 45.D, which provides that, as relevant here, a psychological report "shall be admitted" if the report was disclosed and the report's author is available for cross-examination. Mother essentially argues this rule supersedes Juvenile Rule 44's notice of objection requirement because, in Mother's view, the rule exists to prevent a party from "sneak[ing]" such reports into evidence. The language of Juvenile Rule 45.D, however, does not support this argument. Rather than limiting the admissibility of evidence such as psychological examination reports, Juvenile Rule 45.D provides that such a report "shall be admitted into evidence" (regardless of any objection) if the requirements of the rule are met. The rule does not preclude the trial court from admitting evidence as appropriate when, as here, the report is disclosed, there is no objection and the author does not testify. Moreover, Rule 45.D does not purport to displace the directive in Juvenile Rule 44.D.2 that the pretrial disclosure and timely objection requirements in Juvenile Rule 44.B.2.e "shall govern admissibility of exhibits" at a severance trial.

 ¶ 11 Enforcing the waiver provision of Juvenile Rule 44.B.2.e is necessary precisely because of cases such as this. Adopting Mother's interpretation of the rules would allow litigants who did not file a timely pretrial notice of objection to ambush opposing parties by raising objections at trial that the party seeking to introduce the evidence may not be able to address. Although parental rights are fundamental rights, and terminating them requires adequate due process notice, these rights are not absolute in the face of the equally important interests of protecting children and resolving uncertainty in

their care environments. *See Maricopa Cnty. Juv. Action No. JS–501568,* 177 Ariz. 571, 580, 869 P.2d 1224, 1233 (App.1994) (noting the State's interest in protecting children); *Kent K. v. Bobby M.,* 210 Ariz. 279, 284, ¶ 24, 110 P.3d 1013, 1018 (2005) (observing that "parental rights are not absolute"). The requirements of Juvenile Rule 44.B.2.e exist to ensure proceedings move forward efficiently, and the rule does not impose an undue burden on the fundamental rights at issue. Accordingly, by failing to file a timely pretrial notice of objection as required by Juvenile Rule 44.B.2.e, Mother waived her objections to the admission of the exhibits.[4]

 ¶ 12 Although this court need not address DCS' harmless error argument, even if the juvenile court erred in admitting the exhibits, the error was harmless. *See State v. Davolt,* 207 Ariz. 191, 205, ¶ 39, 84 P.3d 456, 470 (2004) (noting that error is harmless when "the reviewing court can say beyond a reasonable doubt that the error did not contribute to the verdict") The record shows that, even without the exhibits, sufficient evidence was presented to terminate Mother's parental rights.

¶ 13 It is uncontested that Child was in an out of home placement for longer than nine months, and two DCS caseworkers testified that Mother, despite being provided reunification services, neglected to remedy the circumstances causing Child's removal. *See* A.R.S. § 8–533.B.8(a) (West 2015). This testimony was based on their experience as caseworkers, and their personal knowledge of the case's circumstances. Although the caseworkers testified to having reviewed the challenged exhibits, this testimony was not crucial to their credibility as witnesses or in establishing the statutory grounds for termination. *See In re James P.,* 214 Ariz. 420, 425, 153 P.3d 1049, 1054 (App.2007) ("The juvenile court is in the best position to assess witness credibility, and [the appellate court's] role is to determine if the evidence adduced . . . is sufficient to support the court's adjudication."). Additionally, Mother does not challenge the trial court's determination of

---

4. In future similar situations, the best practice would be that when reports are disclosed, the disclosing party warn the opposing parties that

the reports could be admissible, pursuant to Juvenile Rule 44.B.2.e, unless a timely objection is made.

Child's best interests, and the record reflects the juvenile court reasonably concluded that terminating Mother's parental rights would benefit or prevent harm to Child. Because the record supports these findings independent of the exhibits Mother challenges, we will not disturb them on appeal. *See Ariz. Dep't of Econ. Sec. v. Rocky J.*, 234 Ariz. 437, 440, ¶ 12, 323 P.3d 720, 723 (App.2014).

## CONCLUSION

¶ 14 For the above stated reasons, we affirm the juvenile court's order terminating Mother's parental rights.