NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

GUY N., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, B.N., *Appellees.*

No. 1 CA-JV 14-0294
FILED 6-16-2015

Appeal from the Superior Court in Maricopa County
No. JD509751
The Honorable David J. Palmer, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate, Mesa
By David C. Lieb
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Eric Knobloch
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Patricia K. Norris and Judge Patricia A. Orozco joined.

---

**C A T T A N I**, Judge:

¶1        Guy N. ("Father") appeals the superior court's order terminating his parental rights as to his daughter B.N. For reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2        In December 2010, B.N. was born substance-exposed to methadone. In November 2011, the Arizona Department of Child Safety ("DCS") received a report of neglect regarding B.N. A DCS caseworker smelled a strong odor of marijuana while inspecting the home where B.N. and her mother were staying. Mother informed DCS that she and Father had been involved in a domestic violence incident and that Father had returned to Illinois. DCS filed an in-home dependency petition and set up a safety plan, appointing relatives to provide supervision.

¶3        Approximately one month later, DCS received a report that the safety plan was not being carried out, and after a caseworker found B.N. in an unsafe situation in a hotel room, DCS filed a motion to change physical custody. The superior court granted the motion, and subsequently found B.N. dependent as to both Mother and Father.

¶4        DCS offered Father substance abuse treatment and testing, parenting classes, supervised visitation, and a psychological evaluation to help demonstrate he could parent B.N. Father failed to complete a required substance abuse test while in Arizona, and although he reported he was attending regular alcoholics anonymous meetings in Illinois, he failed to provide any documentation to confirm his attendance.

¶5        In October 2012, Father admitted himself into a halfway house and began participating in substance abuse testing and a treatment program. Father was asked to leave the treatment program, however, because of a physical altercation with another participant.

¶6          In January 2013, Father was arrested on an outstanding warrant for theft, and he was later sentenced to two years in prison. In September 2013, DCS moved to sever Mother and Father's parental rights on grounds of chronic substance abuse and six, nine, and fifteen months' time in care. *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(3), (B)(8)(a), (B)(8)(b), (B)(8)(c).[1]  Father thereafter provided DCS with a certificate of completion of a ten-week parenting class, and after his release from prison in December 2013, he began participating in drug treatment services. But Father missed scheduled drug tests in February and March 2014, and he gave a diluted sample in April 2014. Father thereafter stopped complying with required substance abuse testing.

¶7          At a contested severance hearing in June 2014, a DCS caseworker testified that Father was unable to discharge his parental responsibilities due to a lengthy history of substance abuse and his failure to complete substance abuse testing and treatment. Father admitted that his substance abuse began at a young age and continued through adulthood. Father also admitted having missed several drug tests even though he knew a missed test would be treated the same as testing positive.

¶8          The court found that Father was unable to discharge his parental responsibilities because of his lengthy history of substance abuse, and also that B.N. had been in an out-of-home placement for fifteen months or longer.[2]  The court further found that severance would be in B.N.'s best interests because it would allow B.N. to be placed for adoption in a more permanent and stable environment. Based on those findings, the court terminated Father's parental rights.

¶9          Father timely appealed. We have jurisdiction under A.R.S § 8-235(A).

## DISCUSSION

¶10          Father argues the superior court erred by admitting improper evidence, by finding grounds for termination despite DCS's alleged failure to make diligent efforts to reunify the family, and by finding severance to be in B.N.'s best interests.

---

[1]          Absent material revisions after the relevant date, we cite a statute's current version.

[2]          Mother's parental rights were also terminated, but she is not a party to this appeal.

## I.    Evidentiary Issues.

**¶11**        Father argues that the superior court improperly admitted police reports and treatment records that contained hearsay evidence and lacked foundation.

**¶12**        We review evidentiary rulings for an abuse of discretion. *Kimu P. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 39, 42, ¶ 11, 178 P.3d 511, 514 (App. 2008).   We will not reverse unless there has been an abuse of discretion resulting in prejudice.  *Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 82–83, ¶ 19, 107 P.3d 923, 929–30 (App. 2005).

**¶13**        Prior to trial, Father filed a timely objection to DCS's initial disclosure statement, objecting to the admission of:

> Any and all caseworker reports, case notes, psychological/ psychiatric/medical/mental    evaluations/reports/records, doctor/hospital reports/records, police reports, criminal records/reports, court reporter transcripts, polygraph tests/results, therapists reports, home studies, parent aide reports and/or other documentation in reference to this case and/or any of the parties involved unless the State or other party presents the author of the report/documentation and removes all statements which originated from someone other than the report/documents author.

**¶14**        DCS subsequently filed a supplemental notice disclosing anticipated witnesses.   DCS advised the court that it had made the witnesses available for interview, and had invited Father's counsel to identify any other individuals counsel intended to interview, but had received no response.   At the severance hearing, the superior court admitted police reports and several substance abuse evaluation and treatment reports over Father's objection.

**¶15**        Father alleges error, relying on Rule 45(D) of the Arizona Rules of Procedure for the Juvenile Court, which provides that "[a report] shall be admitted into evidence if the report has been disclosed to the parties pursuant to Rule 44(B)(1) and the author of the report is available for cross-examination."   Father asserts that because DCS did not call witnesses to testify regarding the police reports and his treatment and evaluation reports, the reports should not have been admitted.

**¶16**        We need not address whether the police reports and substance abuse treatment and evaluation reports were properly admitted,

however, because any arguable error in admitting the reports was harmless. Father testified that he began using alcohol at age 12, marijuana at age 13, cocaine at age 16, acid in his junior year of high school, and heroin at age 19. Father admitted that after DCS referred him for substance abuse testing, he did not comply with testing requirements. And Father did not dispute that he provided a diluted sample on one required drug test and that he missed other scheduled tests even though he knew a missed test would be deemed to be a positive test. Moreover, Father's only claim of sobriety related to his time in prison and to the period of time after DCS sought to terminate his parental rights. Therefore, there was overwhelming evidence of Father's continuing substance abuse independent of documentary evidence, and any error relating to the documentary evidence was harmless. *See Alice M. v. Dep't of Child Safety*, 237 Ariz. 70, 73, ¶ 12, 345 P.3d 125, 128 (App. 2015) (noting that even if juvenile court erred in admitting disputed exhibits, the error was harmless); *see also State v. Davolt*, 207 Ariz. 191, 205, ¶ 39, 84 P.3d 456, 470 (2004) (noting that error is harmless when "the reviewing court can say beyond a reasonable doubt that the error did not contribute to the verdict").

## II.     Severance Ruling.

**¶17**          In order to terminate a parent's rights, the court must find at least one statutory severance ground by clear and convincing evidence and also must find by a preponderance of the evidence that termination is in the child's best interests. A.R.S. § 8-533(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22, 110 P.3d 1013, 1018 (2005). We accept the court's factual findings unless no reasonable evidence supports those findings, and we will affirm a termination of parental rights unless it is clearly erroneous. *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 449, ¶ 12, 153 P.3d 1074, 1078 (App. 2007) (citation omitted).

### A.     Severance Grounds and Reunification Services.

**¶18**          To terminate parental rights on the ground of chronic substance abuse, DCS must establish that the parent was "unable to discharge parental responsibilities because of . . . a history of chronic abuse of dangerous drugs, controlled substances or alcohol and there [were] reasonable grounds to believe that the condition w[ould] continue for a prolonged indeterminate period." A.R.S. § 8-533(B)(3); *Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12, 123 P.3d 186, 189 (App. 2005). Substance abuse "need not be constant to be considered chronic." *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 377, ¶ 16, 231 P.3d 377, 381 (App. 2010).

**¶19** Severance under § 8-533(B)(3) also requires that DCS make reasonable efforts to reunify the family, unless such efforts would be futile. *See Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 191–92, ¶¶ 31–34, 971 P.2d 1046, 1052–53 (App. 1999). DCS must undertake reunification measures that have "a reasonable prospect of success." *Id.* at 192, ¶ 34, 971 P.2d at 1053.

**¶20** Here, the superior court did not abuse its discretion by finding that Father was unable to discharge his parental responsibilities due to a history of substance abuse and that there were reasonable grounds to believe the condition would continue for a prolonged indeterminate period. During the period between December 2011 and May 2012, Father only completed two drug tests. Father did not make serious efforts to comply with required services until several months after the court changed the case plan to severance and adoption. As noted previously, Father admitted to his extensive history of substance abuse beginning at a young age. Despite warnings to Father that missed and diluted drug tests would be treated as positive tests, Father missed several scheduled tests.

**¶21** The court's finding that DCS exercised due diligence in offering Father services to help him address his substance abuse issues is similarly supported by the record. DCS offered Father substance abuse testing and treatment, parenting classes, supervised visitation, and a psychological evaluation. Father was referred for numerous drug tests and treatment during his stay in Arizona, as well as in Illinois. Although Father asserted that he stopped drug testing because of transportation issues, he never requested assistance in obtaining transportation. Thus, DCS provided services as required, and the superior court did not abuse its discretion by finding chronic substance abuse as a ground for severance.

**¶22** Because we affirm the court's finding that Father was unable to discharge parental responsibilities due to a history of substance abuse, we need not address the alternative ground of fifteen months' time in care. *See, e.g.*, *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251, ¶ 27, 995 P.2d 682, 687 (2000).

### B. Best Interests.

**¶23** Father asserts that the superior court's finding regarding B.N.'s best interests was not supported by sufficient evidence. We disagree.

**¶24** In addition to finding a statutory ground for severance, the court must find by a preponderance of the evidence that termination is in the best interests of the child. A.R.S. § 8-533(B); *see also Kent K.*, 210 Ariz. at

284, ¶ 22, 110 P.3d at 1018.  To establish a basis for such a finding, DCS "must present credible evidence demonstrating 'how the child would benefit from a severance *or* be harmed by the continuation of the relationship.'"  *Lawrence R. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 585, 587, ¶ 8, 177 P.3d 327, 329 (App. 2008) (citation omitted).

**¶25**         B.N.'s foster parents reported that B.N. improved during her stay with them and "beg[an] to develop a sense of humor . . . [and] finally beg[an] to smile."  In its termination order, the superior court found that termination was in the best interests of B.N., noting that she was in an adoptive placement with her paternal aunt.  Implicit in the court's finding that B.N. was adoptable was its conclusion that B.N. would benefit from the greater permanency and stability that would be provided by an adoptive home.  We thus affirm the superior court's ruling that terminating Father's rights was in B.N.'s best interests.  *See Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5, 982 P.2d 1290, 1291 (App. 1998) (stating that current adoptive placement meeting the child's needs supports best interests finding); *see also Lawrence R.*, 217 Ariz. at 587, ¶ 8, 177 P.3d at 329 (noting that evidence that child is adoptable is sufficient to support a finding that child would benefit from terminating the parent's rights).

## CONCLUSION

**¶26**         For the foregoing reasons, we affirm the superior court's order terminating Father's parental rights as to B.N.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama