NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

TERESA F., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, T.F., D.F., *Appellees*.

No. 1 CA-JV 15-0123
FILED 10-8-2015

Appeal from the Superior Court in Maricopa County
No. JD505677
The Honorable Rodrick J. Coffey, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda L. Adams
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Peter B. Swann joined.

---

**J O N E S**, Judge:

**¶1**        Teresa F. (Mother) appeals the juvenile court's order granting guardianship of T.F. and D.F. (collectively, the Children) to their maternal aunt and uncle.  On appeal, Mother challenges the juvenile court's findings that the Department of Child Safety (DCS) proved adequate grounds for guardianship by clear and convincing evidence.  Mother also argues the court erred in considering information contained within a psychological evaluation report but not admitted into evidence.  For the following reasons, we affirm.

## FACTS[1] AND PROCEDURAL HISTORY

**¶2**        In 2001, T.F., born in 1999, and D.F., born in 2000, were removed from Mother's custody and placed with their biological father after DCS received reports of abuse against the Children's older siblings.  In 2005, DCS received reports of the father neglecting and physically abusing the Children, and they returned to live with Mother.

**¶3**        In 2012, DCS received reports Mother was being evicted from her home and was unable to support the Children.  Following her eviction Mother placed the Children with her nephew and lived out of her car.  Later that year, she contacted police claiming the nephew had kidnapped the Children and wanted the children temporarily placed in foster care.

**¶4**        An investigating case manager for DCS met with Mother and reported signs of mental instability.  DCS took temporary custody of the Children, and in July 2012, the juvenile court adjudicated the Children dependent as to Mother and adopted a case plan of family reunification.

---

[1]        "'[W]e view the facts in the light most favorable to upholding the juvenile court's order.'"  *Desiree S. v. Dep't of Child Safety*, 235 Ariz. 532, 533 n.2, ¶ 1 (App. 2014) (quoting *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010)).

¶5 DCS provided reunification services to Mother including transportation, parenting skills instruction, and supervised visitation. The plan required Mother to participate in random urinalysis testing, obtain mental health treatment, be subject to medical monitoring, develop parenting skills, and secure stable housing and income.

¶6 While Mother's urinalysis test results were negative, DCS's primary concern remained Mother's mental health. Mother had been treated for depression since 1995, and a traumatic head injury and consequential brain surgery in 2001 gave rise to additional mental health maladies. Medical records from a July 2012 evaluation indicate Mother suffers from bipolar disorder, dysthymic disorder, post-traumatic stress disorder, and a mood disorder. At the time of that evaluation, Mother was prescribed medication and instructed to return and report her symptoms and responses to the medication. Mother had not returned to the prescribing doctor as directed, was not taking her medication, and was not mentally stable.

¶7 In September 2012, parent aid services were cancelled and no parental visits were scheduled based upon the Children's desire to not have visitation with Mother. However, the Children were given the means and opportunity to communicate with Mother and request visitation if they wished. In December, Mother's mental health was again evaluated and, based upon the recommendations of the examining doctor, DCS recommended Mother receive additional treatment to stabilize her mental health, and her contact with the Children be limited to therapeutic visits.

¶8 Mother elected to receive those mental health services through the Veterans Administration Medical Center (VAMC), but refused to provide medical records to DCS verifying her receipt of treatment. As a result, in July 2013, the juvenile court ordered VAMC to release Mother's medical records to DCS. Those records revealed Mother had not been receiving mental health treatment and was taking "herbal meds" in lieu of prescribed medication. Mother also moved out of Maricopa County and did not return to the Phoenix area despite DCS's recommendation she do so in order to participate in therapeutic visits.

¶9 In August 2013, the custodial relative with whom the Children had been placed became unable to care for the Children, and the juvenile court ordered they be placed in the physical custody of a maternal aunt and uncle in Seattle, Washington. In the same order, the court found DCS had made reasonable family reunification efforts up to that point.

**¶10** In February 2014, at DCS's request, the juvenile court changed the case plan to guardianship, again finding reasonable efforts had been made to reunify the Children with Mother. DCS filed a motion to appoint the Children's maternal aunt and uncle in Washington as permanent guardians pursuant to Arizona Revised Statutes (A.R.S.) sections 8-871[2] and -872. At the contested guardianship hearing in April 2015, DCS reported the Children were thriving in the care of their maternal aunt and uncle and had expressed a desire to continue living in Washington under their care. One of the relatives learned sign language in order to communicate with T.F., who is deaf, and both Children were receiving regular medical and dental care. Each of the Children was provided means to communicate with Mother via email and telephone, but as of the guardianship hearing, neither had expressed any desire to do so.

**¶11** The court granted DCS's motion, and Mother timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1), and Arizona Rule of Procedure for the Juvenile Court 103.

## DISCUSSION

**¶12** Mother argues DCS did not prove any grounds for the guardianship under A.R.S. § 8-871(A). On review, we will affirm an order establishing a guardianship based upon findings of clear and convincing evidence "unless no reasonable evidence supports those findings." *See Jennifer B. v. Ariz. Dep't of Econ. Sec.*, 189 Ariz. 553, 555 (App. 1997) (citing *Pima Cnty. Juv. Sev. Action No. S-113432*, 178 Ariz. 288, 292 (App. 1993)); A.R.S. § 8-872(F) (stating party filing a motion to appoint a guardian "has the burden of proof by clear and convincing evidence").

**¶13** The court may establish a guardianship if it is in the child's best interests and all of the following apply:

1. The child has been adjudicated a dependent child.

2. The child has been in the custody of the prospective permanent guardian for at least nine months as a dependent child. The court may waive this requirement for good cause.

---

[2] Absent material revisions from the relevant date, we cite a statute's current version.

3.  If the child is in the custody of the division or agency, the division or agency has made reasonable efforts to reunite the parent and child and further efforts would be unproductive. The court may waive this requirement if it finds that reunification efforts are not required by law or if reunification of the parent and child is not in the child's best interests because the parent is unwilling or unable to properly care for the child.

4.  The likelihood that the child would be adopted is remote or termination of parental rights would not be in the child's best interests.

A.R.S. § 8-871(A). Of these elements, the first, second, and fourth are uncontested. Thus, we need only consider whether DCS proved, by clear and convincing evidence, that (1) guardianship is in the best interests of the Children, and (2) DCS made reasonable efforts to reunify Mother with the Children and further efforts would be unproductive, reunification efforts were not required by law, or reunification was not in the Children's best interests. *See* A.R.S. § 8-871(A). Reasonable evidence supports the juvenile court's findings that these remaining requirements were met.

**A.      The Trial Court's Guardianship Order is in the Children's Best Interests.**

**¶14**         Best interests of a child are established by either an affirmative benefit to the child arising by appointing a guardian, or a detriment to the child arising by denying the guardianship motion. *See Jennifer B.*, 189 Ariz. at 557 (citing *Maricopa Cnty. Juv. Action No. JS 500274*, 167 Ariz. 1, 6-7 (1990)). Here, the juvenile court found the Children's best interests served by appointing the maternal aunt and uncle as the Children's guardians. Specifically, the court found the Children "wish to remain" with their relatives, the relatives "are meeting all of the [C]hildren's special needs, including [T.F.'s] special sign language needs," and are "solidif[ying] [the Children's] newfound stability, which they had not experienced in their mother's care."

**¶15**         Additionally, the DCS caseworker's testimony and Mother's medical records demonstrate the severity of the ongoing mental health problems she failed to adequately remedy. She did not submit to recommended mental health treatment and failed to take her prescribed medication. Therefore, the record supports the juvenile court's finding that guardianship provides an "affirmative benefit" to the Children. Moreover,

denying the motion would be a detriment to the Children who are receiving the special care and stability they need from relatives with whom they wish to remain.

### B. DCS Made Reasonable Efforts to Reunify Mother with the Children.

¶16        Mother argues DCS failed to provide reasonable efforts to reunify her with the Children as required by A.R.S. § 8-871(A)(3). This Court has held that DCS is not required to undertake "futile efforts" in attempting to reunify parents with children, but is required by the U.S. Constitution to "undertake measures with a reasonable prospect of success." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999) (citing *Maricopa Cnty. Juv. Action No. JS-5209 and No. JS-4963*, 143 Ariz. 178, 189 (App. 1984)). Although *Mary Ellen C.* is a severance action, the same "'fundamental liberty interest of natural parents in the care, custody and management of their child'" is at stake in guardianship actions brought under A.R.S. § 8-871. *See id.* (quoting *Santosky v. Kramer*, 455 U.S. 745, 753 (1982)). Therefore, the same family reunification efforts required of DCS in severance actions are also required in this case.

¶17        Mother argues DCS's cancellation of parent aid services after the Children refused to participate in visitation demonstrates DCS did not make reasonable efforts at reunification and sets a "dangerous precedent." The record reflects, however, DCS made reasonable reunification efforts by providing random urinalysis testing and mental health services. That visitation was cancelled due to Children's refusal to participate does not negate those efforts, and Mother has not justified her failure to participate in necessary mental health services.

¶18        Mother also argues DCS's failure to provide therapeutic visitation as recommended in a case manager's report proves DCS failed to make reasonable reunification efforts. We disagree. That case manager's report actually recommends Mother "relocate to the children's area so that she can maintain contact with the children and attempt to rebuild her relationship with them. That would need to be done, primarily, in the context of therapeutic visits over a long period of time." The report also states: "No contact outside of a therapeutic environment is recommended for [Mother] and her children. Any involved counselor should be involved to obtain an opinion as to whether or not the children would be harmed by having therapeutic contacts with their mother." As such, the report does not contain a recommendation for contact, but that contact be limited to therapeutic visitation, and even then only if it would not be harmful to the

Children. Mother, however, remained outside of Maricopa County, did not obtain the recommended mental health treatment, and was not taking her medication.

¶19 The record supports the juvenile court's finding that further reunification efforts, including visitation and parent aid services, were futile. *See Mary Ellen C.*, 193 Ariz. at 192, ¶ 34. Not only did the Children decline any contact with Mother, Mother also stopped receiving the mental health treatment DCS recommended, stopped taking her medication, and moved away, thereby frustrating any reasonable possibility of successful reunification through visitation, parent aid, or other services. Therefore, it cannot be said DCS failed to make reasonable efforts to reunify Mother with the Children.[3]

¶20 Mother's failure to follow the case plan supports the juvenile court's additional finding that, even if reunification efforts were not sufficient, Mother was "unwilling or unable to properly care for the child[ren]." A.R.S. § 8-871(A)(3). Reasonable evidence therefore supports the court's determination that the statutory requirements for guardianship were met.

### C. The Juvenile Court Did Not Err in Admitting or Considering the Evidence Presented.

¶21 Finally, Mother asserts the juvenile court erred in admitting testimony and reports containing "snippets and potentially inaccurate summaries" of psychological evaluation results not admitted into evidence. We review evidentiary rulings for an abuse of discretion. *Kimu P. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 39, 42, ¶ 11 (App. 2008) (citing *Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 82-83, ¶ 19 (App. 2005)).

---

[3] Mother also argues the evidence presented by DCS falls short of clear and convincing evidence because the evidence was at least a year and a half old at the time of the February 2015 guardianship hearing. However, Mother fails to account for her failure to obtain mental health treatment — DCS's primary concern — which left DCS without any other measures that would have a reasonable prospect of successfully reunifying Mother with the children. *See Mary Ellen C.*, 193 Ariz. at 192, ¶ 34 (holding the State is required to undertake reunification measures having "a reasonable prospect of success" but not measures that are futile) (citing *JS-5209*, 143 Ariz. at 189).

¶22 In juvenile court, exhibits are disclosed to all parties prior to a hearing, and objections to the exhibits must be raised before the hearing occurs:

> If a party objects to the admission of an exhibit, the party shall file a notice of objection and the specific grounds for each objection . . . within ten (10) days of receipt of the list of exhibits. Specific objections or grounds not identified in the notice of objection shall be deemed waived, unless otherwise ordered by the court.

Ariz. R.P. Juv. Ct. 44(B)(2)(e). Although the results of the psychological evaluation conducted in December 2012 were not directly admitted into evidence, Mother stipulated to the admission of DCS progress reports that, in part, summarized the evaluation results. A party "failing to file a timely pretrial notice of objection as required by [Rule 44(B)(2)(e)] . . . waive[s] her objections to the admission of the exhibits." *Alice M. v. Dep't of Child Safety*, 237 Ariz. 70, 73, ¶ 11 (App. 2015). Because Mother did not object to the DCS reports, she waived any objection to their admission.

¶23 During the guardianship hearing, DCS also elicited testimony from the case manager about psychological evaluation results not contained in the report she prepared. Mother argues this testimony was inadmissible hearsay. *See* Ariz. R. Evid. 801, 802. Although Mother's counsel objected to testimony from the case manager concerning evidence not admitted at the hearing, the question was then rephrased and no hearsay objection was raised. We will not consider objections regarding the admissibility of evidence not raised in the juvenile court. *See Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 452, ¶¶ 20-21 (App. 2007) (holding objections raised for the first time on appeal are waived) (citing *Jost v. Ross*, 82 Ariz. 245, 247 (1957), and *Leigh v. Swartz*, 74 Ariz. 108, 114 (1952)).

**CONCLUSION**

¶24 Based upon the foregoing, we affirm the juvenile court's order granting DCS's motion to appoint the Children's maternal aunt and uncle as guardians.

Ruth A. Willingham · Clerk of the Court
FILED: ama