NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

LUCIAN B., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, L.B., J.E., *Appellees.*

No. 1 CA-JV 16-0516
FILED 4-10-2018

Appeal from the Superior Court in Maricopa County
No. JD503878
The Honorable Arthur T. Anderson, Judge

**AFFIRMED**

COUNSEL

Czop Law Firm, PLLC, Higley
By Steven Czop
*Counsel for Appellant Lucian B.*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Chief Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Diane M. Johnsen and Judge James P. Beene joined.

---

**T H U M M A**, Chief Judge:

¶1 Lucian B. (Father) challenges the superior court's order terminating his parental rights to his children L.B. and J.E. The stay previously entered in this case is lifted and, because Father has shown no error, the order is affirmed.

## FACTS[1] AND PROCEDURAL HISTORY

¶2 L.B. was born in 2001 and J.E. was born in 2003. In February 2002, the predecessor to the Department of Child Safety (DCS) filed a dependency petition alleging L.B. was dependent due to drug abuse and neglect by L.B.'s mother[2] and alcohol abuse and failure to protect by Father. L.B. was found dependent with a family reunification case plan. When J.E. tested positive for cocaine and methamphetamine at birth, J.E. was added to that dependency and was found dependent with a family reunification case plan. During this first dependency, Father worked reunification services. By December 2003, the children had been returned to Father's physical custody and by May 2004, the court dismissed the dependency.

¶3 A decade later, DCS received a report that police had responded to "a drug complaint" at the home and found drugs, drug paraphernalia and weapons. Mother admitted to using methamphetamine daily; Father denied knowledge of Mother's daily methamphetamine use and denied using illegal substances himself. Mother and Father were arrested and charged with drug, weapons and child neglect offenses. DCS took the children into care and filed a dependency petition; the children

---

[1] This court views the evidence in a light most favorable to sustaining the superior court's findings. *See Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207 ¶ 2 (App. 2008).

[2] Mother's parental rights to the children were terminated in May 2016, she did not appeal from that ruling and she is not a party here.

were found dependent as to Father in October 2014, with a family reunification case plan.

**¶4** During this second dependency, the children reported they had experienced physical, emotional and sexual abuse and neglect while in Father's care and that Father knew about the abuse and neglect and did nothing. Although participating in some services, Father denied any substance abuse and was inconsistent at times in drug testing. He also denied abuse or neglect or any responsibility for the children being taken into care and failed to appreciate the children's resulting behavioral health issues. In intake paperwork, when asked why his children were in care, Father responded "DCS kidnapped" them. Father's behavior during visits with the children was inappropriate. He discussed the dependency, told J.E. she was not safe in her placement and suggested he was going to kidnap the children. Starting in mid-2015, the children refused visits with Father.

**¶5** In January 2016, over Father's objection, the court changed the case plan to severance and adoption. DCS' motion to terminate alleged abuse and neglect (including failure to protect) and 15-months time-in-care and that termination was in the best interests of the children. *See* Ariz. Rev. Stat. (A.R.S.) §§ 8-533(B)(2), (8)(c) (2018).[3]

**¶6** During a three-day contested severance adjudication in September and October 2016, the court heard from four witnesses and received more than a dozen exhibits. After taking the matter under advisement, in November 2016, the court issued an eight-page ruling finding DCS proved by clear and convincing evidence abuse and neglect and 15-months time-in-care and proved by a preponderance of the evidence that severance would be in the best interests of the children. This court has jurisdiction over Father's timely appeal pursuant to Article 6, Section, 9, of the Arizona Constitution, A.R.S. §§ 8-235(A), 12-2101(A) and 12-120.21(A) and Ariz. R.P. Juv. Ct. 103-104.

## DISCUSSION

**¶7** As applicable here, the superior court was required to find a statutory ground for severance by clear and convincing evidence and also find, by a preponderance of the evidence, that termination was in the best interests of the children. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 288 ¶ 41

---

[3] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

(2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 12 (2000). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," this court will affirm an order terminating parental rights as long as it is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18 (App. 2009) (citation omitted).

**¶8**      This case has a fairly unique procedural history on appeal. As a result, Father briefed the appeal as a self-represented party and, after appointment of new counsel, Father's counsel filed a supplemental brief on appeal.[4] This decision addresses the issues briefed in Father's pro se briefs and, to the extent they differ, his supplemental brief.

**¶9**      Father's original pro se briefing raises three interrelated issues on appeal involving whether he "receive[d] his constitutional right to due process of law;" whether hearsay evidence was "properly admitted;" and whether "Father's right to cross examine witnesses [was] denied." Father's supplemental brief, filed by appointed counsel, argues the trial evidence does not support the superior court's findings.[5]

**¶10**      Father correctly states that due process includes notice of the claims against a person and a meaningful opportunity to be heard. *See, e.g., Dep't of Child Safety v. Beene*, 235 Ariz. 300, 305 ¶ 11 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). His reference to the Confrontation Clause, however, is misplaced. The Confrontation Clause applies "[i]n all criminal prosecutions," U.S. Const. amend VI, but is not applicable in severance proceedings. Father also correctly states that, "[i]n dependency and severance proceedings, 'the child's best interests are paramount.'" *Beene*,

---

[4] Father's counsel filed a request asking that Father be allowed to file a pro se supplemental reply brief. Because Father is represented by counsel, that request is denied. While that request was pending Father filed a pro se supplemental reply brief, which is improper. To avoid any further delay of the resolution of this appeal, however, the court construes the pro se supplemental reply brief as supplementing Father's original pro se reply brief and addresses those arguments.

[5] To the extent Father seeks to raise issues for the first time in reply on appeal, those issues have been waived. *See, e.g., Romero v. Sw. Ambulance*, 211 Ariz. 200, 204 n.3 (App. 2005).

235 Ariz. at 304 ¶ 9 (citation omitted). As applied, however, the question is whether the evidence properly admitted supports the severance order.

¶11        Father argues some individuals who wrote reports the court received in evidence were not "'available for cross-examination,'" Ariz. R.P. Juv. Ct. 45(C), meaning those reports should not have been admitted. Several exhibits were written by the DCS caseworker who testified, and was cross-examined, at trial. For reports in evidence that did not originate with DCS, Father did not seek to cross-examine the authors and fails to show on appeal error in admitting them under Ariz. R.P. Juv. Ct. 45(D) or (E) or that they lacked proper foundation. Finally, although Exhibit 6 was written by a non-testifying DCS caseworker, after DCS provided foundational testimony, Father had "[n]o objection" to its admission. On this record, Father has not shown the court erred in admitting the exhibits. *See* Ariz. R.P. Juv. Ct. 44(B)(2)(e) and 45; *Alice M. v. Dep't of Child Safety*, 237 Ariz. 70, 72-73 ¶¶ 7-11 (App. 2015).

¶12        Father next argues that "there was no one with personal first hand knowledge that would support" a finding that he "is incapable of parenting a child." In support of this contention, Father points to one of his witnesses who testified that Father "was on trac[k] to reunite with his children and all was going well." As to this argument, Father has not shown he timely raised hearsay or foundational objections at trial, meaning any such objections are waived. *See* Ariz. R. Evid. 103(a); *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 450 ¶ 21 (App. 2007). To the extent his argument asks this court to reweigh evidence, that is the proper role of the superior court at trial, not this court on appeal. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282 ¶ 12 (App. 2002) (citing cases). Moreover, exceptions to the rule against hearsay not contained in the Arizona Rules of Evidence allow admission of hearsay in various reports (including hearsay in reports of child safety workers, reports of evaluation and statements of a child) in severance trials. *See* A.R.S. § 8-237 ("Statement or conduct of child; hearsay exception"); Ariz. R.P. Juv. Ct. 45 ("Admissibility of evidence"). Accordingly, Father has shown no error on this basis.[6]

---

[6] Father also argues the superior court was required to address the best interests factors specified in A.R.S. § 25-403, which applies to dissolution of marriage proceedings. Father cites no authority for the proposition that the finding requirements in that statute apply to severance proceedings, which are governed instead by A.R.S. § 8-537.

¶13        More generally, Father argues that the evidence does not support the superior court's findings on either of the statutory grounds for termination or best interests. The trial record is to the contrary and supports the statutory ground of 15-months time-in-care and that severance was in the children's best interests.

¶14        Although Father asserts the caseworker who testified at trial "knew almost nothing of personal knowledge," she testified to being the case manager from June 2014 to August 2016. Without objection, the caseworker testified the children had been in care for at least 15 months pursuant to court order, Father had been unable to remedy the circumstances that caused the children to be in an out-of-home placement and there was substantial likelihood that he would not be capable of exercising parental care and control in the near future. She testified, in some detail and without objection, about the services provided to Father, noted he participated in some but not others and added he had not made necessary behavioral changes and did not take responsibility for the children being in care. This evidence is contrary to Father's argument that the record shows he "participated in all DCS services offered to him."

¶15        The caseworker also testified that, among other things, Father denied any responsibility for the children being taken into care, denied the children had been abused or neglected in his home and failed to understand the mental-health needs of the children. A clinical psychologist testified to her evaluation of the children in November 2015, including their reports about being abused and neglected while in Father's care, and that Father knew about at least some of the abuse and neglect during that time. Trial evidence also showed that, when Father participated in supervised visits, his conduct was not appropriate – he discussed the dependency with the children, told J.E. she was not safe in her placement and suggested he was going to kidnap the children. A June 2016 report stated Father "has been offered multiple services over an extended period of time, has made little reported progress and continues to significantly lack insight with regard to his role in his children's removal from his care." This evidence properly supported the superior court's corresponding findings and conclusions.

¶16        Father argues that after the children declined visits with him, he "sent his children two letters as a result of the lack of physical contact," "in an effort to maintain a relationship with them." In those letters, however, Father "talk[ed] about running away with the kids." The letters did nothing to further his relationship with the children; to the contrary, after reading the letters, the children "experienced a surge in emotional

dysregulation." On this record, Father has not shown that the superior court improperly weighed this evidence.

¶17         Father argues that "whatever he did was secondary to the desires of the children," and that "[t]he focus of the case [impermissibly] became on what the children wanted." To the extent this argument is based on the children's decision to have no contact with Father, the record supports the children's concerns. Father also quotes *Roberto F. v. Dep't of Child Safety*, 232 Ariz. 45, 59 (App. 2013), as supporting his argument. That case, however, involved a superior court concluding that the father had "'made significant progress, which does appear to have behavioral change,'" with a psychologist testifying father "'was able to parent' and that his prognosis was 'favorable that he can continue to adequately care for his children.'" *Id.* at 57-58 ¶¶ 60-61 A guardian ad litem also indicated father should be allowed to have ongoing contact even after severance and a Court Appointed Special Advocate stating he "did not have any concerns with [f]ather's parenting skills." *Id.* at 59 ¶¶ 69-70. The trial record here is quite different, meaning Father has not shown that *Roberto F.* mandates reversal.

¶18         Father did not testify at trial, electing instead to provide a written statement. Father called one witness, who testified that visits she supervised between the children and Father during a four-month period ending in April or May 2015 went well. The witness had no more recent involvement, but agreed that Father "was on a successful track at one point." The overall record before the court, however, including the testimony of the caseworker and the exhibits, amply supports the finding that DCS proved by clear and convincing evidence the statutory grounds of 15-months time-in-care. Accordingly, Father has not shown that the superior court erred in finding DCS met its burden to show a statutory ground for severance.[7]

¶19         Father also argues the superior court abused its discretion in finding that termination of his parental rights was in the best interests of the children. Father argues that the court erred by basing that finding solely "on the children's desire to remain with their placement." Best interests requires DCS to prove, by a preponderance of the evidence, how the

---

[7] Given this finding, this Court need not and expressly does not address the arguments addressing other statutory grounds for severance. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280 ¶ 3 (App. 2002) ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds.").

children would benefit from severance or be harmed by the continuation of the parent-child relationship. *In re Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990). This court reviews such a decision for an abuse of discretion. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47 ¶ 8 (App. 2004).

**¶20**        Father's argument that the best interests decision "was based on the children's desire to remain with their placement" misses the mark. Legally, the superior court "may consider evidence that an existing placement is meeting the needs of the child in determining that severance is in the child's best interest[s]." *Mary Lou C.*, 207 Ariz. at 50 ¶ 19 (citing *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377 ¶ 5 (App. 1998)). Factually, the court found the children "are doing well, feel safe, and receive the psychological and medical support they need," adding they "consider placement their home" and both "children are adoptable and adoption by the foster family is anticipated." The record fully supports these findings. The DCS caseworker testified the children were placed together in a kinship placement that was meeting their needs and that termination would provide the children needed permanency, safety and stability. A psychologist testified termination would further the children's best interests, based on various sources including her separate interviews of the children. On this record, the court properly concluded DCS had shown, by a preponderance of the evidence, that termination was in the best interests of the children.

## CONCLUSION

**¶21**        The stay previously entered in this case is lifted and, because Father has shown no error, the superior court's order terminating his parental rights is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA