NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL
RIGHTS AS TO D.C.

No. 1 CA-JV 22-0173
FILED 11-17-2022

---

Appeal from the Superior Court in Maricopa County
No. JD533416
The Honorable Ashley V. Halvorson, Judge

**AFFIRMED**

---

COUNSEL

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee, Department of Child Safety*

---

**MEMORANDUM DECISION**

Vice Chief Judge David B. Gass delivered the decision of the court, in which
Presiding Judge Samuel A. Thumma and Judge Cynthia J. Bailey joined.

---

**G A S S**, Vice Chief Judge:

¶1        Father appeals the superior court's order terminating his parental rights to D.C., his biological child. D.C.'s mother is not a party to this appeal. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        This court views the evidence, and reasonable inferences drawn from it, in the light most favorable to affirming the superior court's ruling. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 13 (App. 2002).

¶3        Father and mother began a relationship in 2015. In November 2016, mother gave birth to D.C. Father and mother had an extensive history of domestic violence. In September 2017, police arrested father for twice punching mother in the face with a closed fist while she was holding D.C. Father pled guilty to assault, a domestic violence offense, and marijuana possession. The superior court placed father on probation.

¶4        Father's probation prohibited contact with mother without prior written approval. In October 2019, the superior court issued a warrant for father's arrest because he stopped contacting his probation officer. In May 2020, the Department of Child Safety (DCS) received reports of domestic violence and found father living with mother and D.C. without written consent. When the police arrived at the home, father initially tried to run, and when apprehended, gave the police a false name. DCS took temporary custody of D.C. and became concerned when D.C. displayed signs of trauma and anxiety. In behavioral therapy, D.C. repeatedly mentioned father and described how he "makes Mommy cry and hurts Mommy's head."

¶5        In June 2020, DCS filed a petition alleging D.C. dependent because of father's history of domestic violence and substance abuse. Father participated in an initial dependency hearing, during which the superior court advised him it might terminate his parental rights to D.C. if he did not participate in services. DCS conditioned reunification on father completing services and a psychological evaluation.

¶6        In September 2020, father pled no contest to DCS's dependency action. The superior court found D.C. dependent as to father and adopted a family reunification case plan. At that point, the superior court noted father was in contact with DCS until August 2020 but did not

2

engage in reunification services. DCS again offered father services including drug testing and treatment, supervised visitation, and a psychological evaluation. Between the September 2020 dependency finding and December 2021, father stopped participating in the dependency. Father later sought to explain why he did not participate during that time, including he was incarcerated and he thought the case had resolved.

¶7 In September 2021, the superior court changed the case plan to termination and adoption, and DCS filed a motion to terminate father's parental rights based on abandonment and nine- and fifteen-months out-of-home placement grounds. In December 2021, father appeared for the continued initial termination hearing. The superior court continued the hearing until March 2022, and DCS again referred father for services, including a psychological evaluation.

¶8 In March 2022, father completed his psychological evaluation. The evaluator concluded at the time father had a "poor prognosis" for becoming an effective parent in the foreseeable future. According to the evaluator, father denied personal responsibility for DCS's involvement, refused forthcoming participation, and lacked insight into ways he could improve as a parent. The evaluator recommended services for father and expressed concern about father having visits because of the earlier trauma father caused D.C. In April 2022, DCS moved to suspend visits between father and D.C. based on the evaluator's concern. The superior court denied the motion.

¶9 In May 2022, at the termination adjudication, the superior court heard testimony from father, father's fiancé, and DCS's caseworker. Father claimed his case manager never returned his calls, but the superior court found father's explanations "were not credible." Additionally, the superior court found father never participated in services and questioned the legitimacy of a paystub father submitted into evidence.

¶10 After weighing the evidence and the witnesses' credibility, the superior court found DCS proved all three grounds for termination. After finding termination was in D.C.'s best interests, the superior court terminated father's parental rights. Father timely appealed. This court has jurisdiction under article VI, section 9, of the Arizona Constitution, and A.R.S. §§ 8-235, 12-120.21.A, and 12-2101.A.1.

**ANALYSIS**

¶11 On appeal, father argues DCS failed to make diligent efforts to provide appropriate reunification services because it did not comply

with his belated request to have supervised visits with D.C. and violated his statutory and constitutional rights by withholding those requested visits on "pure speculation as to the impact on D.C." Though the superior court found sufficient evidence to grant termination on three separate grounds, this court will not reverse if one of the grounds was appropriate. *See* A.R.S. § 8-533.B; *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000). Here, that ground is abandonment.

¶12 To terminate parental rights, the superior court must find DCS proved both by clear and convincing evidence one of the statutory grounds for termination and by a preponderance of evidence termination is in the child's best interests. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149–50, ¶ 8 (2018). In reviewing the superior court's findings, this court does not reweigh the evidence because the superior court is in "the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Jordan C. v. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (citations omitted).

¶13 Arizona law defines "abandonment" as:

> the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

A.R.S. § 8-531(1). Abandonment does not consider subjective intent, only objective conduct. *Michael J.*, 196 Ariz. at 249, ¶ 18.

¶14 To begin, father offers no credible evidence he provided "reasonable support" and maintained "regular contact" with D.C. during the dependency. At best, he says he had virtual contact with D.C. through mother, though mother also did not have D.C. during that time. He does not suggest he provided "normal supervision." Indeed, nothing in the record suggests father made even "minimal efforts to support and communicate with" D.C.

¶15 Even so, father argues termination was improper because DCS did not make diligent efforts when he reengaged in the case in December 2021. DCS has a constitutional obligation to make reasonable efforts to unite a family to protect the parent's due process rights. *See Donald*

*W. v. Dep't of Child Safety*, 247 Ariz. 9, 22, ¶ 46 (App. 2019). While parents have a fundamental right to raise their children, the State has a right to protect children from abusive parents and may impose reasonable requirements like therapy or counseling. *Minh T. v. Ariz. Dep't of Econ. Sec.*, 202 Ariz. 76, 80, ¶ 14 (App. 2001). A parent may not prevent termination by refusing to participate in reasonably required services. *See Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994).

¶16 The superior court found DCS's visitation requirements were reasonable because father made D.C. anxious and fearful. The superior court also found father did not attempt to visit D.C. after her June 2020 removal until his belated efforts in early 2022—more than 18 months later. And at the outset of the case, the superior court warned father it could terminate his parental rights if he failed to participate in services. Father did not heed the warning.

¶17 DCS produced substantial evidence of father's failure and its own attempts to contact father, including progress reports and case worker testimony. Yet, despite DCS's continued attempts to contact him, father absented himself from the case for more than 14 months, from September 2020 to December 2021. In October 2020, father also absconded from probation. True, after father spent more than 18 months refusing services, he completed a psychological evaluation. But the superior court considered this belated participation "too little, too late," especially considering the evaluator believed father was not forthcoming. *See Maricopa Cnty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994) (saying State need not keep the "window of opportunity for remediation open indefinitely" because doing so is not in the child's or parent's best interests). Additionally, father told the evaluator his parenting skills did not require improvement. Considering father's non-involvement, history of domestic violence, and failure to acknowledge any parenting issues, the superior court had sufficient evidence to find DCS's actions reasonable.

¶18 Father challenged DCS's evidence, but the superior court did not find father's evidence credible. This court does not reweigh the evidence, including the credibility of witnesses. *See Jordan C.*, 223 Ariz. at 93, ¶ 18.

¶19 The record supports the superior court's credibility findings. To begin, father provided contradictory and confusing explanations for his absence. Father argued he thought the dependency case had ended and mother had D.C., but he offered no evidence to support his alleged belief beyond testimony from himself and his fiancé. Notably, father stopped

participating in the dependency at the same time he absconded from probation. And father confusingly faults DCS for his actions while at the same time saying he thought DCS was out of the picture. Father also claims he could not participate in DCS's services because he was in jail, but father was incarcerated for only 7 days over his 13-month absence.

**¶20**     As a final point, father submitted a pay stub as evidence of his financial capacity to support D.C. But cross-examination established the paystub's flaws. The superior court, thus, reasonably found the paystub substantially undermined father's credibility because it was full of irregularities. These few examples support the superior court's credibility findings.

**¶21**     Reasonable evidence supports the superior court's finding DCS acted reasonably and provided diligent efforts to reunify father and D.C. Father does not challenge the superior court's best-interests determination, "and the record reflects the juvenile court reasonably concluded that terminating [father's] parental rights would benefit or prevent harm to [D.C.]. Because the record supports these findings . . . , we will not disturb them on appeal." *Alice M. v. Dep't of Child Safety*, 237 Ariz. 70, 73–74, ¶ 13 (App. 2015).

## CONCLUSION

**¶22**     We affirm.



AMY M. WOOD • Clerk of the Court
FILED:     AA