286 P.3d 1095

**In re the Marriage of Cheryl WALSH, Petitioner/Appellant,**

v.

**E. Jeffrey WALSH, Respondent/Appellee.**

**No. 1 CA–CV 11–0269.**

Court of Appeals of Arizona, Division 1, Department C.

Oct. 2, 2012.

Burch & Cracchiolo, P.A. By Daniel Cracchiolo and Daryl Manhart and Jessica Conaway, Phoenix, Attorneys for Appellant.

Mariscal, Weeks, McIntyre & Friedlander, P.A. By Michael J. Plati and Marlene A. Pontrelli, Phoenix, Attorneys for Appellee.

## OPINION

KESSLER, Judge.

¶ 1 Cheryl Walsh ("Wife") appeals from the family court's valuation of E. Jeffrey Walsh's ("Husband's") professional goodwill and its award of child support. For the following reasons, we reverse the goodwill valuation and award of child support and remand for further proceedings consistent with this decision. Specifically, Husband's goodwill and the community's interest in that goodwill was not limited to Husband's stock redemption value in the national law firm of which he was a shareholder.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 Husband and Wife, both licensed attorneys, were married in December 1986. In January 2010, Wife filed a Petition for Dissolution of Marriage. The parties have three children, including one who is still a minor. Husband and Wife have agreed to joint legal custody of that child with Wife serving as the primary residential parent.

¶ 3 Financial success by each spouse allowed the parties to have an extremely high standard of living during their marriage. With the national economic collapse, however, Wife's income from her marketing and public relations company fell dramatically. Despite that collapse, Husband, an attorney and shareholder at the Phoenix branch of a national law firm (the "firm"), continued to earn substantial compensation between 2006 and 2009.

¶ 4 During the dissolution proceeding, the parties disagreed over the community's interest in Husband's intangible professional goodwill. Husband took the position that his interest in the firm should be $140,000—his stock redemption value pursuant to the firm's Amended and Restated Stockholder's Agreement ("the Agreement").[1] Husband's expert witness testified that while Husband had personal goodwill, as of the date of divorce, the only realizable benefit from Husband's employment was the $140,000 redemption value.[2] Thus, Husband's position

---

1. Pursuant to the Agreement, Husband made $140,000 in capital contributions to the firm. If Husband's employment is terminated, he is required to sell his shares back to the firm for the $140,000 purchase price. The Agreement states:

 Upon the voluntary or involuntary termination of employment of any Shareholder with the Corporation for any reason other than death, the Corporation shall, effective as of the date of such termination, purchase the shares of Common Stock and Preferred Stock of the terminating Shareholder and the terminating Share-

 holder shall sell his or her Common Stock and Preferred Stock to the Corporation for the Purchase Price.

 Husband testified that he would need to assist the firm in collecting any outstanding accounts receivable prior to receiving the $140,000.

2. In his report, Husband's expert stated that the key considerations in supporting his opinion were: (1) the "[v]alue of employment/shareholder status defined by the Agreement"; (2) "[f]air market value compensation limits 'excess' earnings"; (3) "[n]either 'enterprise' goodwill or

was that any personal goodwill he had in his legal practice was limited to the $140,000 stock redemption agreement with his firm. Wife's expert applied a capitalization-of-earnings approach [3] and examined Husband's tax returns, historical income performance, earning sustainability, reputation, and client loyalty.[4] Based on those factors, and giving little weight to the Agreement, Wife's expert valued Husband's professional practice at $1,269,000.

¶ 5 In November 2010, the family court found that Husband's interest in the firm and the value of Husband's law practice were limited to the $140,000 stock redemption value contained in the Agreement:

> [T]he Court finds that under a "realizable benefits" standard, Husband's interest in [the firm], goodwill or otherwise, is limited to the $140,000 contained in the Agreement.... It would be mere speculation to find that Husband could leave [the firm] and continue to earn the income he has received for the past three years. *Wife's contention that Husband could move from [the firm] with his book of business, does not take into account a number of difficul-* ties with such a move including conflicts that may occur at another law firm and the assistance of [the firm's] "platform" in assisting Husband to bring in clients.
>
> *Accordingly, the Court finds that the community interest in Husband's law practice and membership interest in [the firm] is limited to the redemption value of the stock as contained in the Agreement which equals $140,000 ....* To find otherwise would necessitate that the Court create a fiction.

(Emphasis added.)

¶ 6 In addition, although Wife requested $2000 in monthly child support, the family court declined to deviate from the Arizona Child Support Guidelines. *See* Ariz.Rev.Stat. ("A.R.S.") section 25–320 app. (Supp.2012) ("Guidelines").[5] Accordingly, the court ordered Husband's monthly child support obligation to be $1270 effective December 1, 2010, and $1277.02 effective December 1, 2011.

¶ 7 Husband moved to alter or amend the family court's findings of fact and conclusions of law, and Wife filed an application for

---

'personal' goodwill is transferable or realizable"; and (4) "[a]lternative value calculations." His report further provides that:

> Any value attributable to 'goodwill' as relating to [Husband's] employment ... is contingent on his continuing, and significant, commitment to the private practice of law. This raises the question regarding the existence of goodwill should [Husband] elect to leave the practice.... While [Husband] might continue to earn a significant level of compensation ... it would be inappropriate to attribute value to a distributable marital asset based on the position.
>
> While [Husband] has provided no indications that such a transition is imminent, the significant point, once again, is the fact that attributing value to [Husband's] employment ... is dependent on the assumption of his continued practice of law—*subsequent to his marital dissolution.*
>
> Authoritative valuation literature, based primarily on court precedents, is quite consistent with regard to the premise that *the impact of the post-marital efforts of either spouse should be removed from the value of assets includable in the marital estate and subject to division.*

(Second emphasis added.)

3. The capitalization-of-earnings approach has been defined as "valuation of a going concern business on the basis that the operations will continue to yield constant and regular earnings. These earnings (called 'normalized earnings') are multiplied by a capitalization rate (normally the reciprocal of the desired rate of return) to arrive at the value of the business." *Rueschenberg v. Rueschenberg,* 219 Ariz. 249, 251 n. 2, ¶ 4, 196 P.3d 852, 854 n. 2 (App.2008) (citation omitted). Here, Wife's expert adjusted Husband's compensation "to reflect the fact that [Husband]'s billable hours exceed[ed] industry median billable hours." Her expert then calculated what portion of Husband's earnings exceeded the compensation of a comparable peer group. This value was then divided by a 21.6% rate of return to measure Husband's excess economic earnings for five years into the future.

4. In 2007, Husband considered leaving his firm to join another law firm. With Wife's help, Husband completed an attorney employment questionnaire which included a list of Husband's current clients. Husband indicated he believed all but one of the clients listed would follow him to a new firm. Husband testified that from the list, only two remained his clients as of the date of trial.

5. We cite the current version of the applicable statute when no revisions material to this decision have since occurred.

attorneys' fees and costs. The family court granted both motions,[6] and Wife timely appealed. *See* ARCAP 9; Ariz. R. Fam. Law P. 82. We have jurisdiction pursuant to A.R.S. § 12–2101(A)(1) (Supp.2011).

## ISSUES AND STANDARD OF REVIEW

¶ 8 Wife argues that the family court erred by: (1) measuring the value of Husband's professional practice by Husband's stock redemption value; and (2) failing to deviate from the Guidelines in calculating child support.

¶ 9 "The valuation of assets is a factual determination that must be based on the facts and circumstances of each case." *Kelsey v. Kelsey,* 186 Ariz. 49, 51, 918 P.2d 1067, 1069 (App.1996). We view the evidence in the light most favorable to upholding the decision, *Mitchell v. Mitchell,* 152 Ariz. 317, 323, 732 P.2d 208, 214 (1987) ("*Mitchell II* "), and "will not disturb [the] trial court's factual findings unless clearly erroneous," *Hrudka v. Hrudka,* 186 Ariz. 84, 92, 919 P.2d 179, 187 (App.1995). "A court abuses its discretion if it commits an error of law in reaching a discretionary conclusion, it reaches a conclusion without considering the evidence, it commits some other substantial error of law, or 'the record fails to provide substantial evidence to support the trial court's finding.'" *Flying Diamond Airpark, L.L.C. v. Meienberg,* 215 Ariz. 44, 50, ¶ 27, 156 P.3d 1149, 1155 (App.2007) (quoting *Grant v. Ariz. Pub. Serv. Co.,* 133 Ariz. 434, 456, 652 P.2d 507, 529 (1982)). Moreover, we review legal issues and the application of law *de novo. See City of Tucson v. Clear Channel Outdoor, Inc.,* 218 Ariz. 172, 180, ¶ 16, 181 P.3d 219, 227 (App.2008). "Although we will not disturb a court's award of child support absent an abuse of its discretion, we will review its interpretation of the Guidelines *de novo* as a question of law." *Hetherington v. Hetherington,* 220 Ariz. 16, 21, ¶ 21, 202 P.3d 481, 486 (App.2008) (citations and internal quotation marks omitted).

## DISCUSSION

### A. VALUATION OF HUSBAND'S PROFESSIONAL GOODWILL

¶ 10 Wife argues that the family court erred in valuing the community's interest in Husband's goodwill at $140,000. Husband, on the other hand, argues that the court correctly applied a "realizable benefits" standard when making its determination. To the extent the family court held that Husband's professional goodwill as an attorney was limited to his stock redemption interest in his law firm, we agree with Wife.

¶ 11 "[R]eferred to as the most intangible of intangibles, goodwill is essentially reputation that will probably generate future business." *Dugan v. Dugan,* 92 N.J. 423, 457 A.2d 1, 3 (1983) (citation and internal quotation marks omitted); *see also Mitchell II,* 152 Ariz. at 319, 732 P.2d at 210 ("[I]t has been defined as 'that asset, intangible in form, which is an element responsible for profits in a business.'" (citation omitted)); *Wisner v. Wisner,* 129 Ariz. 333, 337, 631 P.2d 115, 119 (App.1981) ("It has also been defined as, in its broadest sense, reputation."); *In re Brown,* 242 N.Y. 1, 150 N.E. 581, 582 (1926) ("Men will pay for any privilege that gives a reasonable expectancy of preference in the race of competition. Such expectancy may come from succession in place or name or otherwise to a business that has won the favor of its customers. It is then known as good will." (citation omitted)). As we held in *Molloy v. Molloy,* "[f]uture earning capacity *per se* is not goodwill. However, when that future earning capacity has been enhanced because reputation leads to probable future patronage from existing and potential clients, goodwill may exist and have value." 158 Ariz. 64, 67, 761 P.2d 138, 141 (App.1988) ("*Molloy I* ") (citation omitted). "[L]awyers, like other professionals, face evaluation of their professional goodwill as a community asset upon marital dissolution." *Id.*

¶ 12 "It is a difficult task at best to arrive at a value for the intangible component of a professional practice attributable to goodwill." *Mitchell II,* 152 Ariz. at 323, 732

---

6. The order to amend did not relate to any of the issues on appeal.

P.2d at 214. "No rigid and unvarying rule for the determination of the value of goodwill has been laid down by prior case law and each case must be determined on its own facts and circumstances." *Wisner*, 129 Ariz. at 338, 631 P.2d at 120. In a professional practice, the court may look to the following determinative factors in examining the existence of goodwill: "the practitioner's age, health, past earning power, reputation in the community for judgment, skill and knowledge, and his or her comparative professional success." *Id.* at 337–38, 631 P.2d at 119–20; *see also* Martin J. MacMahon, Annotation, *Valuation of Goodwill in Law Practice for Purposes of Divorce Court's Property Distribution*, 77 A.L.R.4th 683 (1989) ("[F]actors for consideration in arriving at a value for professional goodwill in a law practice include personal characteristics of the practitioner, such as age, comparative professional success, health, length of time in practice, past earning power, and reputation." (footnotes omitted)).

¶ 13 In addition, we "consider the terms of the partnership agreement as one factor in the determination of the value of the community interest in goodwill.... [P]artnership agreements are designed to deal with particular aspects of the business, and simply do not address the considerations involved in valuation for a marital dissolution." *Mitchell II*, 152 Ariz. at 321–22, 732 P.2d at 212–13. As the court held in *In re Marriage of Fenton*, 134 Cal.App.3d 451, 184 Cal.Rptr. 597, 602 (1982),

It appears that the trial court in the instant case felt constrained by the stock purchase agreement.... [H]usband here was the highest wage earner in his law firm, his professional reputation in the community was excellent, he had been in practice for over 25 years, and wife's expert testimony revealed that his earning power was considerably greater than that of his peers. This experience, reputation, and skill was developed over the years he was married to wife and it is a community asset. It indirectly creates excess income for husband whether he stays with his firm or strikes out on his own. The value of "goodwill" is well established in the case

law, and it cannot be eliminated by a recital in the corporate documents.

¶ 14 Here, using a "realizable benefits" standard, the family court found Husband's interest in the firm was limited to the Agreement's $140,000 stock redemption value. Specifically mentioning goodwill, the court further stated that "to find[ ] otherwise would run counter to the intent of the courts" by requiring "mere speculation." We interpret that ruling to apply to Husband's personal professional goodwill because the court did not otherwise address Husband's goodwill and its explanation precludes a consideration of such goodwill as speculative.

¶ 15 The family court should have considered Husband's personal goodwill in valuing Husband's law practice beyond his stock redemption interest in the firm. The court required the goodwill to be realizable, that is, something that can be bought or sold on the open market, and held the Agreement to be controlling. We rejected the family court's approach in *Molloy I*, where we stated "[f]uture earning capacity *per se* is not goodwill. However, when that future earning capacity has been enhanced because reputation leads to probable future patronage from existing and potential clients, goodwill may exist and have value." *Molloy I*, 158 Ariz. at 67, 761 P.2d at 141. Other courts have also rejected such a limited approach to goodwill and have considered factors beyond realizable benefits. *See, e.g., Dugan*, 457 A.2d at 6 ("Goodwill is to be differentiated from earning capacity."); *In re Marriage of Aufmuth*, 89 Cal.App.3d 446, 152 Cal.Rptr. 668, 679 (1979) ("At the time of trial, husband was 31 years old and had been a member of the bar for only seven years. He had been a member of his law firm for just five years, and a shareholder for only two years. In view of his youth and comparative inexperience, the trial court could reasonably conclude that he had not contributed in any substantial way to whatever goodwill the law firm might possess."), *disapproved on other grounds by In re Marriage of Lucas*, 27 Cal.3d 808, 166 Cal.Rptr. 853, 614 P.2d 285, 289 (1980); *Levy v. Levy*, 164 N.J.Super. 542, 397 A.2d 374, 380 (N.J.Super.Ct. Ch. Div. 1978) ("What is being measured is in reality

the capacity of repeat patronage and of a certain immunity to competition to produce earnings beyond the average for that kind of business."); *In re Marriage of Reiling,* 66 Or.App. 284, 673 P.2d 1360, 1363 (1983) (stating factors used in determining goodwill include "the practitioner's age, health, past demonstrated earning power, professional reputation in the community as to his judgment, skill, knowledge, his comparative professional success, and the nature and duration of his business as a sole practitioner or as a member of a partnership or professional corporation to which his professional efforts have made a proprietary contribution."); *In re Marriage of Freedman,* 35 Wash.App. 49, 665 P.2d 902, 905 (1983) ("[T]he husband argues an award of goodwill is not justified because an attorney may not sell his legal practice. The test is not whether goodwill can be sold but whether it has value to the professional spouse. Such spouse enjoys the benefits of goodwill regardless of its salability." (citations omitted)).

▪ ¶ 16 In part, on this record the court should not have relied on the realizable benefit approach. As one commentator has explained:

"Goodwill in a professional practice may be attributable to the business enterprise itself by virtue of its existing arrangements with suppliers, customers or others, and its anticipated future customer base due to factors attributable to the business. *It may also be attributable to the individual owner's personal skill, training or reputation....*"

*Any goodwill, whether enterprise or personal, must be divisible and distributable....* Realizable goodwill is that which the owner can convert into cash at any time by selling the business in the open market.... Since realizable goodwill has an immediate cash value, it represents more than mere future potential earnings....

*Unrealizable goodwill, and the valuation and divisibility thereof, are much more problematical. It occurs where the business or practice cannot be sold on the open market and understandably causes the most concern and confusion.*

*Unrealizable goodwill exists mostly in law and other professional practices ...* where the business is basically marketing the personal skills and reputation of the owner. *Its value is to an individual, and that value is essentially the likelihood of future enhanced earnings.*

Christopher A. Tiso, *Present Positions on Professional Goodwill: More Focus or Simply More Hocus Pocus,* 20 J. Am. Acad. Matrim. Law. 51, 53–54 (2006) (emphasis added) (citing *Yoon v. Yoon,* 711 N.E.2d 1265, 1268–69 (Ind.1999)). Thus, when goodwill has no immediate cash value, the court must apply its own judgment and discretion in making its determination. In that endeavor, its determination is not limited to corporate documents setting a shareholder's interest in the assets of the company.

¶ 17 In reaching its conclusion, the court relied on *Mitchell II, In re Marriage of Molloy,* 181 Ariz. 146, 888 P.2d 1333 (App. 1994) ("*Molloy II*"), and *In re Marriage of Kells,* 182 Ariz. 480, 897 P.2d 1366 (App. 1995). In *Molloy II,* we held "that a valuation must be based on *realizable* benefits." 181 Ariz. at 151, 888 P.2d at 1338. The court should not have relied on *Molloy II*'s reference to realizable benefits because that reference was referring to the firm's net assets, not the husband's professional goodwill. In *Molloy I,* the family court prohibited the wife from presenting evidence of her husband's goodwill interest in his law firm other than what could be determined from existing agreements. 158 Ariz. at 65, 761 P.2d at 139. We held that the family court denied the wife a fair trial by denying her the opportunity to challenge her husband's assessment of the value of his legal practice. *Id.* at 68, 761 P.2d at 142. The case was remanded. *Id.* at 69, 761 P.2d at 143.

¶ 18 On remand, the wife introduced evidence of her husband's share of the firm's net assets, *i.e.,* the realizable assets, as well as the value of his goodwill. *Molloy II,* 181 Ariz. at 149, 888 P.2d at 1336. The family court, however, ruled that it would only consider the wife's evidence of goodwill. *Id.* The wife appealed and in *Molloy II* we agreed with her that the superior court misapplied the holding in *Molloy I* "by failing to consid-

er the value of the husband's *entire* interest rather than just the 'goodwill' component." *Id.* at 148, 888 P.2d at 1335. As the family court had considered the husband's professional goodwill, the wife's appeal was based on the court's exclusion of evidence pertaining to the value of her husband's interest in the firm's net assets. *Id.* at 150, 888 P.2d at 1337. We found no reversible error, however, because the wife had not shown that the husband would realize an economic benefit from those assets other than what was provided in firm agreements. *Id.* at 151, 888 P.2d at 1338. As Wife here points out, this holding applies to the proper valuation method of net assets, and not goodwill.

¶ 19 In *Molloy II*, we also considered the husband's cross-appeal, which challenged the sufficiency of the evidence supporting the family court's valuation of goodwill. *Id.* at 152–53, 888 P.2d at 1339–40. We found the court was not required to use a particular method in calculating the value of goodwill, and found the wife's evidence of a deferred compensation agreement to be compelling. *Id.* at 153, 888 P.2d at 1340.

 ¶ 20 Here, the family court should not have restricted its analysis of the community interest in Husband's goodwill to "realizable benefits." [7] Those realizable benefits apply to Husband's interest in the firm's net assets, not his goodwill based on his reputation and experience. *See Molloy II*, 181 Ariz. at 153, 888 P.2d at 1340. As our supreme court noted in *Mitchell II*, a professional's goodwill is more akin to a pension when dealing with the dissolution of a marriage: the other spouse has added to the value of the goodwill and should share in that enhanced ability to earn money in the future. 152 Ariz. at 320, 732 P.2d at 211.

¶ 21 Although the family court may have been concerned about speculation, consideration of the *Wisner* factors and expert testimony help guide the court in its examination of enhanced future earning capacity. *See Hollander v. Hollander*, 89 Md.App. 156, 597

A.2d 1012, 1018–19 (1991) ("Although assessing the value of goodwill may seem a formidable task, the intricacy of the solution should not force any court to shirk its responsibility nor ignore the basic fact that goodwill holds considerable value for the professional."). Not only has our supreme court endorsed the *Wisner* factors, but it found no abuse of discretion when goodwill was based on a gross earning analysis of the spouse. *See Mitchell II*, 152 Ariz. at 322–23, 732 P.2d at 213–14.

 ¶ 22 Alternatively, Husband argues that "personal goodwill" is distinct from "enterprise goodwill" and is not divisible marital property. Although some states hold that personal goodwill may not constitute marital property, consideration of the *Wisner* factors demonstrates that Arizona does in fact consider qualities that are attributable to the individual in determining community property values. *Compare Wisner*, 129 Ariz. at 337–38, 631 P.2d at 119–20, *with May v. May*, 214 W.Va. 394, 589 S.E.2d 536, 547 (2003) ("Personal goodwill, which is intrinsically tied to the attributes and/or skills of an individual, is not subject to equitable distribution. It is not a divisible asset. It is more properly considered as the individual's earning capacity that may affect property division and alimony. On the other hand, enterprise goodwill, which is wholly attributable to the business itself, is subject to equitable distribution.").

¶ 23 Husband further argues that "personal goodwill" is realized through future earnings and is accounted for in spousal maintenance. We disagree. Although the Court of Appeals in *Mitchell v. Mitchell*, 152 Ariz. 312, 316, 732 P.2d 203, 207 (App.1985) ("*Mitchell I*"), found goodwill to be a division of the husband's individual earning capacity and not a community asset, the Arizona Supreme Court expressly rejected that holding:

> *Wisner* does not support appellee's argument that a partner's goodwill is a person-

**7.** The family court also relied on *Kells* in using the "realizable benefits" standard and limiting Husband's interest to the Agreement. In *Kells*, we reversed the family court's conclusion that a redemption price in a "Buy Sell Agreement"

dealing with a medical practice was controlling in a dissolution action, holding such an arbitrary valuation should be only one factor in determining the value of a practice. 182 Ariz. at 484–85, 897 P.2d at 1370–71.

al, non-divisible asset because it is not readily marketable....

... "Under the principles of community property law, the wife, by virtue of her position as wife, made to that value [goodwill] the same contribution as does a wife to any of the husband's earnings and accumulations during marriage. She is as much entitled to be recompensed for that contribution as if it were represented by the increased value of stock in a family business."

*Mitchell II*, 152 Ariz. at 320, 732 P.2d at 211 (alteration in original) (citation omitted); *see Buttram v. Buttram*, 122 Ariz. 581, 582, 596 P.2d 719, 720 (App.1979) ("[I]t is clear that the term 'alimony', or in this case 'spousal maintenance', does not contemplate the settlement of property interests between the husband and the wife. It should not be awarded if it is not necessary for the spouse's support and maintenance.").

■ ¶ 24 "Not all errors in the superior court warrant reversal, however. We will reverse only if the complaining party suffers prejudice as a result of the error. Prejudice must appear affirmatively from the record." *Molloy II*, 181 Ariz. at 150, 888 P.2d at 1337. The family court permitted Wife to introduce evidence of Husband's goodwill, through her expert witness. Because we have a complete record of Wife's valuation, "[W]ife has suffered prejudice only if her evidence could support a finding of value in excess of the judgment." *Id.*

■ ¶ 25 In reviewing the record, there is evidence that Husband's goodwill may have exceeded the $140,000 stock redemption value. Wife's expert clearly included such goodwill in his capitalization of earnings approach. *See supra* n. 3. Moreover, although Husband's expert did not account for such goodwill in his analysis, he testified that Husband does in fact possess personal goodwill:

Q: [Husband] has good will today, correct?

A: Personal good will, yes.

. . .

Q: And the [A]greement itself does not place a value on the good will of the firm, correct?

A: That's correct, because it's not distributable.

Q: Okay. The [A]greement does not define what would happen if the shareholder divorces his or her spouse, correct?

A: I did not see any specific reference to divorce.

Q: And in fact what the shareholders' [A]greement does is basically to provide for what [Husband's] contractual withdrawal rights are, correct?

A: Based on what he paid in, yes.

. . .

Q: ... [A]nd you would agree that 96 percent is a really high collection rate?

A: It's good, yes.

Q: And that would be an indication or a reflection of good will, correct?

A: Yep, all that reflected in his personal handling of his clients, yes.

Q: And I think that overall you've said that you think that [Husband] has a strong set of skills, a good reputation, and any firm would want to keep him, correct?

A: Yes.

Q: And just about by any measure that you would use for considering good will in Arizona or even elsewhere, that [Husband] does have good will.

A: Yes, and that's why you'd have to pay a significant level of compensation to replace him.[8]

■ ¶ 26 We conclude that the family court conflated the firm's net assets which were subject to the Agreement with Husband's own goodwill, and that the evidence demonstrates that Husband possessed good-

---

8. While Husband's expert discounted any personal goodwill to zero based on his reading of precedent that future income based on continued practice of law should not be included in goodwill, *supra* n. 2, that conclusion is erroneous as a matter of law. While future earning capacity itself is not necessarily equivalent to goodwill, goodwill would enhance that earning capacity. As *Mitchell* and *Molloy I* both point out, to the extent such future earnings are enhanced by goodwill, the amount of enhancement should be included in an evaluation of assets for purposes of marital dissolution.

will beyond the amount designated by the family court. The goodwill should not have been restricted to the amount Husband would receive from the firm pursuant to the Agreement. We underscore, however, that our holding does not equate goodwill with future earning capacity. While future earning capacity may be evidence of goodwill, the earning capacity is not itself a divisible community asset.

¶ 27 We recognize that the myriad differences between professional practices make it impractical to adopt a one-size-fits-all approach to valuation of a professional's personal goodwill. And we are cognizant of the risk that future income (which is not a community asset), to the extent it is relevant to the valuation of goodwill, is at risk of unlawful division. But the fact that our law allows great flexibility on a case-by-case basis in the choice among valuation methodologies should not be confused with an endorsement of an *ad hoc* approach untethered to legal limits. In *Molloy I*, we explained that future earning capacity per se is not goodwill and that goodwill is when that "future earning capacity has been enhanced because reputation leads to probable future patronage from existing and potential clients...." *Molloy I*, 158 Ariz. at 67, 761 P.2d at 141. In *Mitchell II*, the Supreme Court analogized the divisible component of a professional's goodwill to an interest in pension rights. 152 Ariz. at 320, 732 P.2d at 211. That analogy illustrates the difference between divisible goodwill and mere future income. In the case of a pension, value is generated (at least in part) during the marriage. That value will be realized later, without further effort by the professional. In the case of goodwill, when the professional continues to practice after the divorce, the professional may realize value as a direct result of his or her future efforts. That value is nothing more than future income, and cannot be divided. In applying the factors discussed above, a court must ensure that it does not divide as community property future earnings which are based solely on the professional's post-dissolution work effort.

## B. CHILD SUPPORT

¶ 28 Wife also argues that the family court erred in failing to make an upward adjustment from the presumptive child support amount prescribed by the Guidelines. Husband argues that Wife's award of marital property constituted "considerable financial resources" under A.R.S. § 25–320(D)(2), and provided reasonable evidence for the family court's discretionary decision not to deviate.

¶ 29 The Guidelines establish the manner in which child support obligations are to be calculated. Under the Guidelines, "[t]he total child support amount approximates the amount that would have been spent on the children if the parents and children were living together." Guidelines, Background; *see Ortiz v. Rappeport*, 169 Ariz. 449, 451, 820 P.2d 313, 315 (App.1991) ("[T]he use of the adjusted gross income of both the custodial and non-custodial parent has built into it a standard of living as set forth in the premises contained in the [G]uidelines."). "The amount resulting from the application of [the][G]uidelines is the amount of child support ordered unless a written finding is made ... that application of the [G]uidelines would be inappropriate or unjust in a particular case." A.R.S. § 25–320(D).

¶ 30 The relevant statutory factors for deviating from the Guidelines include:

1. The financial resources and needs of the child.

2. The financial resources and needs of the custodial parent.

3. The standard of living the child would have enjoyed had the marriage not been dissolved.

4. The physical and emotional condition of the child, and the child's educational needs.

5. The financial resources and needs of the noncustodial parent.

6. Excessive or abnormal expenditures, destruction, concealment or fraudulent disposition of community, joint tenancy and other property held in common.

7. The duration of parenting time and related expenses.

A.R.S. § 25–320(D)(1)–(7). In addition,

[i]f the combined adjusted gross income of the parties is greater than $20,000 per month, the amount set forth for combined adjusted gross income of $20,000 shall be the presumptive Basic Child Support Obligation. The party seeking a sum greater than this presumptive amount shall bear the burden of proof to establish that a higher amount is in the best interests of the children, taking into account such factors as the standard of living the children would have enjoyed if the parents and children were living together, the needs of the children in excess of the presumptive amount, consideration of any significant disparity in the respective percentages of gross income for each party and any other factors which, on a case by case basis, demonstrate that the increased amount is appropriate.

Guidelines § 8.

¶ 31 Here, the court found that Husband and Wife had a combined adjusted monthly gross income in multiples of $20,000, with Husband's income amounting to almost seventy-five to eighty percent of the total income and Wife's income including her court-ordered spousal maintenance. The family court capped their monthly income at $20,000 and ordered Husband to pay approximately $1270 in monthly child support.[9] Wife argued that "the marital standard of living and the disparity in the gross incomes of the parties" justified a deviation from the presumptive award to $2000 per month. The family court, however, found "that given the amount of assets awarded to Wife as a result of dissolution, an upward deviation from the Guidelines [was] not warranted," and "[t]here [was] no evidence that upon dissolution,

[M.]'s lifestyle [would] be adversely affected." Consequently, the court ordered "child support in accordance with the Guidelines."

¶ 32 The family court should not have considered the division of marital assets in declining to deviate from the Guidelines. Pursuant to section 5(G):

The court shall not take into account the impact of the disposition of marital property except as provided in [A.R.S. § 25–320(D)(7) ] ("Excessive or abnormal expenditures, destruction, concealment or fraudulent disposition of community, joint tenancy and other property held in common.") or to the extent that such property generates income to a parent.[10]

Even though the amount of child support may have otherwise been within its discretion, we cannot determine on appeal whether the family court would have reached the same result on child support if it had not considered the award to Wife of community assets. Therefore, we reverse its award and remand for the court to consider deviation based on A.R.S. § 25–320(D)(1)–(7) and Guidelines § 8.

## C. ATTORNEYS' FEES

¶ 33 Wife requests attorneys' fees pursuant to A.R.S. § 25–324(A) (Supp.2011) ("The court from time to time, after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings, may order a party to pay a reasonable amount to the other party for the costs and expenses of maintaining or defending any proceeding...."). We find that Husband should pay Wife's reasonable attorneys' fees on appeal.

## CONCLUSION

¶ 34 For the foregoing reasons, we reverse and remand to the family court on the issues

---

9. The court factored in a ten percent discretionary adjustment for a child over the age of twelve, provided that Husband would be responsible for $210 in monthly insurance, made an additional adjustment to reflect Husband's parenting time, and divided the total child support obligation based on each parent's proportionate share of the combined income.

10. Because the Guidelines specifically state that the disposition of marital property can only be

considered with respect to A.R.S. § 25–320(D)(7), it follows that such property cannot be considered under A.R.S. § 25–320(D)(2) ("The financial resources and needs of the custodial parent."). *See State v. Hansen*, 215 Ariz. 287, 289, ¶ 7, 160 P.3d 166, 168 (2007) ("Rules and statutes 'should be harmonized wherever possible and read in conjunction with each other.' " (citation omitted)).

of determination of Husband's goodwill and child support. On remand, the court may adjust amounts of spousal maintenance depending on its determination of any changed amount of the community's interest in Husband's goodwill. We award Wife reasonable attorneys' fees and taxable costs on appeal subject to timely compliance with ARCAP 21.

CONCURRING: PATRICIA K. NORRIS, Presiding Judge and PETER B. SWANN, Judge.