NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

JORDEN B., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, L.B., *Appellees*.

No. 1 CA-JV 21-0188
FILED 1-18-2022

---

Appeal from the Superior Court in Maricopa County
No. JD39266
The Honorable Christopher Whitten, Judge

**AFFIRMED**

---

COUNSEL

Maricopa County Public Advocate, Mesa
By Suzanne W. Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Emily M. Stokes
*Counsel for Appellee Department of Child Safety*

## MEMORANDUM DECISION

Presiding Judge Randall M. Howe delivered the decision of the court, in which Judge Brian Y. Furuya and Judge Michael J. Brown joined.

H O W E, Judge:

¶1        Jorden B. ("Mother") appeals the juvenile court's order terminating her parental rights to L.B. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2        We view the facts in the light most favorable to sustaining the juvenile court's order. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 2 ¶ 2 (2016). Mother is the biological mother of L.B. and two other minor children.[1] Mother was not married to the children's fathers. L.B. was born in March 2020, and at the time of L.B.'s birth, Mother tested positive for methamphetamine, amphetamine, cannabinoids, and Fentanyl. L.B. tested positive for methamphetamine, amphetamine, and cannabinoids, and presumptive positive for Fentanyl. L.B. underwent withdrawal treatment. Mother told hospital staff that she used substances daily, even throughout the pregnancy, and was homeless. Hospital staff observed her suspicious behaviors, which indicated that she was likely under the influence of drugs.

¶3        Hospital staff confronted Mother about her recent substance abuse, but she left the hospital without being discharged and without L.B. The Department soon after took custody of the other children and placed them with a relative. After L.B. was discharged from the hospital, she lived with her paternal grandparents ("Grandparents"), who were willing to adopt her. Because L.B. had been in the hospital and has a different father from her siblings, the Department did not place her with her siblings. The Department placed L.B.'s siblings with their paternal aunt and uncle, a non-adoptive placement because they would likely be reunified with their

---

[1]        L.B.'s father—who was incarcerated at the time of the Department's involvement—and the two other children—who do not share the same father with L.B.—are not subject to this appeal. Her father's rights were also terminated.

father. Despite the siblings' separation, Grandparents intended to coordinate frequent visitation and contact with her siblings.

¶4            Meanwhile, the Department provided Mother with the following services: substance-abuse treatment with TERROS, transportation, substance-abuse testing with Physicians Services, Incorporated ("PSI"), supervised visitation, and parent aide. Mother was eventually discharged from TERROS for failing to maintain contact with it. She also never provided a drug test at PSI, initially attended visits but stopped, and failed to appear for three intakes at the parent-aide service.

¶5            The Department petitioned for dependency of L.B., and the court found that she was a temporary ward and set hearings on the petition. Before the dependency hearing, the Department disclosed a list of exhibits in its initial disclosure statement. Mother objected to the introduction of the exhibits in part because the Department's list was "incredibly vague and ma[de] it impossible for Mother to ascertain what evidence [the Department was] actually planning to admit at trial." The court conducted a dependency hearing, admitted the exhibits, and found by a preponderance of the evidence that L.B. was dependent as to Mother based on neglect due to Mother's substance abuse and her unwillingness or inability to properly and effectively provide for L.B.'s basic needs. The case plan, however, remained family reunification.

¶6            A month later, the Foster Care Review Board found that no progress was being made toward establishing permanency but that L.B. was healthy and eating well in her Grandparents' home. Mother continued not to engage in her case plan, participate in services, or attend visits. The juvenile court held a permanency planning hearing for L.B. and Mother did not appear. The court found that Mother's failure to appear was not supported by any good cause. The court further found that L.B. continued to be dependent. The court held subsequent report and review hearings, which Mother also did not attend, again without good cause.

¶7            A short time later, the Department moved to terminate Mother's parental rights to L.B., arguing that her failure to maintain a normal parent-child relationship for six months constituted prima facie evidence of abandonment and that she had failed to participate in visitation and the Department's recommended services. The Department also argued that she was unable to parent due to her history of substance abuse, which could continue for an "indeterminate period" under A.R.S. § 8–533(B)(3). The juvenile court held a termination hearing, and Mother failed to appear, again without good cause. The court ruled that her failure to appear waived

her right to contest the termination of her parental rights based on the allegations in the motion for termination. Nevertheless, the court set the evidentiary hearing for the following month.

¶8          Mother appeared at the evidentiary hearing and expressed her desire to contest the termination action. The court warned her that if she failed to appear without good cause at subsequent hearings, the court could order termination without her ability to contest it. Counsel gave their statements and L.B.'s guardian ad litem told the court that Mother had not visited L.B. The court reset the hearing as a contested termination hearing later that day, so that Mother could speak with her counsel, with whom she failed to maintain contact. Despite her agreement to appear and the court's warnings, Mother again failed to appear at the reset hearing later that same day. The court determined that Mother's failure to appear was without good cause and proceeded with the hearing in absentia.

¶9          During the hearing, the Department asked the court to admit seven marked exhibits, several of which the court had admitted into evidence during previous dependency hearings. These exhibits consisted of Department progress reports, disclosed through the Juvenile Access Communication Exchange ("JAX") before each hearing, and PSI records. One of the exhibits did not even concern Mother, only L.B.'s father. Mother's counsel objected to their admission because the Department did not provide Mother or her counsel with a list or copies of the exhibits before the hearing pursuant to Arizona Rule of Procedure for the Juvenile Court ("Rule") 44, allegedly making it "very difficult for counsel to do her job." The court noted that this issue needed to be addressed at another time and that the Department should comply with the rules. Notwithstanding its statement, the court elected to proceed, admitted the exhibits, and heard testimony. Grace Blanco, a Department safety specialist, testified that although Mother initially visited with L.B., she eventually stopped attending and failed to appear three times for the parent-aide intake, resulting in closure of the service. She also testified about Mother's failure to participate in TERROS or drug test through PSI. Ms. Blanco also testified that L.B. was less than three years old and that for more than six months, Mother had failed to maintain a normal parental relationship with L.B. She added that L.B. was "thriving" with Grandparents, who were meeting her needs in providing her with clothing, food, and shelter. Mother's counsel did not cross-examine Ms. Blanco or offer her own evidence.

¶10          The court considered the exhibits, testimony, arguments of counsel, and written submission of the parties in thereafter granting the Department's motion for termination. The court found that clear and

convincing evidence existed to terminate Mother's parental rights under A.R.S. § 8–533. More specifically, it found that Mother had abandoned L.B. and failed to maintain a "normal parental relationship" with her by not providing her with reasonable support, regular contact, or normal supervision for at least six months. The court further found that her history of substance abuse provided "reasonable grounds to believe that the condition [would] continue for a prolonged indeterminate period," that L.B. was in out-of-home care for six months or longer, and that Mother took no steps to remedy the circumstances. Further, the court found that the Department made diligent efforts to provide Mother with necessary services and treatment, in which she did not actively participate, and that termination would be in L.B.'s best interests because "it would further the plan of adoption" and give her permanency and stability. In addition, the court found that Grandparents were the "least restrictive placement," she was adoptable, and continuing the parent-child relationship would be detrimental to her. Mother timely appeals.

## DISCUSSION

¶11        Mother argues that this court should vacate and remand the termination order because (1) the Department failed to follow Rule 44 in not disclosing a list and copies of exhibits before the evidentiary hearing, thereby violating her due process right to meaningful notice and warranting preclusion of the evidence; and (2) the court abused its discretion in its best interests determination because it discounted the separation of siblings. We review constitutional issues and the interpretation of statutes and court rules de novo. *Brenda D. v. Dep't of Child Safety*, 243 Ariz. 437, 442 ¶ 15 (2018). A trial court has broad discretion in evidentiary rulings, and thus we will review the court's decision for an abuse of discretion and resulting prejudice. *Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 82–83 ¶ 19 (App. 2005). Because the juvenile court is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts, *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334 ¶ 4 (App. 2004), we will affirm a termination decision unless no reasonable evidence supports it, *Xavier R. v. Joseph R.*, 230 Ariz. 96, 100 ¶ 11 (App. 2012).

## I.        Disclosure of exhibits

¶12        The juvenile court did not abuse its discretion in admitting some of the exhibits, and any error it did commit was harmless. If a parent fails to timely appear for the termination hearing without good cause shown, the court may find that the parent has waived their legal rights and

admitted the allegations in the motion for termination. A.R.S. § 8–863(C); Rule 66(D)(2). The court may then terminate the parent-child relationship "based on the record and evidence presented," A.R.S. § 8–863(C), which includes evidence admitted during previous dependency hearings, *Adrian E. v. Ariz. Dep't of Econ. Sec.*, 215 Ariz. 96, 102 ¶ 23 (App. 2007). Although Rule 44 requires that parties disclose a list and copies of the exhibits that they intend to use at the termination hearing, Rule 44(D)(2), (B)(2)(e), the presentation of evidence . . . "shall be as informal as the requirements of due process and fairness permit[,]" Rule 66(D). If a party fails to comply with Rule 44, "the court *may* impose sanctions" upon that party, which includes precluding evidence, granting a continuance, and entering an order against a party. Rule 44(G) (emphasis added).

¶13 Here, Mother does not contest the grounds for termination or that the Department failed to meet its burden of proof. Rather, she argues that the Department violated her due process rights by not strictly complying with Rule 44's prescriptions. Due process requires reasonable notice and an opportunity to be heard. *See In re Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 355 (App. 1994). But Mother failed to appear at the evidentiary hearing. Thus, the court could consider (1) that she admitted the allegations in the motion as true, and (2) the record and evidence presented in making its termination determination. In fact, the Department had already disclosed the progress reports in connection with previous hearings, and their admission during those hearings secured their inclusion as part of the record—a point Mother does not contest. *See* Rule 45(C) (the Department must disclose progress reports to a parent no later than 10 days before review hearings). Thus, the court was permitted to consider these exhibits during the termination hearing. Even so, evidence that the court considered here not only included the seven exhibits but also testimony, arguments of counsel, and written submissions of the parties.

¶14 Mother argues that the Rule 44 violation prejudiced her in not giving her notice of the evidence and in having the testifying witness be the author of only one exhibit. A report is not necessarily inadmissible as evidence if its author does not testify. *Alice M. v. Dep't of Child Safety*, 237 Ariz. 70, 73 ¶ 10 (App. 2015). To reverse a ruling, the court's error must have prejudiced a party, and prejudice must appear from the record. *Walsh v. Walsh*, 230 Ariz. 486, 494 ¶ 24 (App. 2012). Here, the exhibits' admission did not prejudice her. Although the termination implicates Mother's substantial rights, any error the court may have made is harmless because the record demonstrates that she and her counsel had previously received most of these exhibits. Thus, because the purpose of disclosure is to avoid undue

delay or surprise, *Wells v. Fell*, 231 Ariz. 525, 528 ¶ 13 (2013), the use of the exhibits should not have surprised her or her counsel.

**¶15**  Even if the court erred in admitting the remaining exhibits, such error was also harmless because the court would have still found termination of Mother's parental rights proper by clear and convincing evidence regardless of these previously undisclosed exhibits. *See* Rule 66(C); *Alice M.*, 237 Ariz. at 73 ¶ 12. First, the court could consider the allegations in the motion for termination as true because Mother failed to appear at the hearing. Second, Ms. Blanco's testimony helped support the statutory grounds for abandonment: L.B. was less than three years old and in foster care for more than six months, and Mother did not visit her or participate in services. Third, L.B.'s guardian ad litem spoke to Mother's lack of participation in visits. Taking the motion, testimony, and other statements together with the exhibits already in the record, sufficient evidence exists such that any reasonable judge would have found termination of Mother's rights warranted.

**¶16**  Mother also argues that the court should have sanctioned the Department by precluding the evidence. However, evidence preclusion is not favored. *See Jimenez v. Chavez*, 234 Ariz. 448, 452 ¶ 18 (App. 2014) (preclusion is a proper sanction only if "no less stringent sanctions will suffice"). Further, the Rules should "be interpreted in a manner designed to protect the best interests of the child, giving paramount consideration to the health and safety of the child." Rule 36. Precluding evidence that would further L.B.'s best interests and support termination when proper would be contrary to the intent of the Rules. The court properly gave paramount consideration to L.B.'s health and safety over disclosure requirements that, even if violated, had no effect on the outcome of the ruling. Therefore, the court did not abuse its discretion because reasonable evidence supports the court's decision and any error committed was harmless.

## II. Best interests determination

**¶17**  The court did not abuse its discretion in its best interests determination because reasonable evidence supports the court's decision to allow the siblings to live in separate foster homes. Mother challenges only the juvenile court's finding of best interests and not the statutory grounds for termination. To terminate parental rights, the juvenile court must find by clear and convincing evidence the existence of at least one statutory ground under A.R.S. § 8−533 and by a preponderance of the evidence that termination would be in the child's best interests. A.R.S. § 8–533(B); Rule 66(C); *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 286 ¶ 15 (App. 2016).

Termination of parental rights is in a child's best interests if the child will benefit from the termination or be harmed if the relationship continues. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150 ¶ 13 (2018).

**¶18** Whether a child will benefit from termination requires considering whether the current placement is meeting the child's needs, the child is adoptable, and an adoption plan is in place. *Demetrius L.*, 239 Ariz. at 1, 3–4 ¶ 12. Other primary considerations include the child's stability and security, *id.* at 4 ¶ 15, the parent's prospects for rehabilitation, *Alma S.*, 245 Ariz. at 151 ¶ 15, as well as the child's health and safety, Rule 36. The interests of the parent and child diverge once the juvenile court has found one of the statutory grounds for termination by clear and convincing evidence. *Kent K. v. Bobby M.*, 210 Ariz. 279, 286 ¶ 35 (2005). Thus, the best interests analysis "focuses primarily upon the interests of the child, as distinct from those of the parent," *id.* at 287 ¶ 37, and the juvenile court considers the totality of the circumstances, *Timothy B. v. Dep't of Child Safety*, 250 Ariz. 139, 145 ¶ 20 (App. 2020).

**¶19** Reasonable evidence supports the juvenile court's finding of best interests. L.B. is adoptable and Grandparents are willing to adopt her, they are meeting her needs, and she is "thriving" in their care. Termination will benefit L.B. because if Mother's parental rights are not terminated, L.B. will remain in foster care, delaying permanency. Mother's failure to attend visits or to participate in and complete recommended services has demonstrated that her prospects for rehabilitation are quite low. Grandparents will thus offer her stability and security. The court therefore did not err in determining that termination was in L.B.'s best interests.

**¶20** Mother nonetheless argues that the court discounted the fact that L.B. and her siblings are in different foster homes because the court did not address it in its findings of fact. In doing so, she points to the Sibling Information Exchange Program under A.R.S. § 8–543 and believes that her children may not have contact with each other. Because the juvenile court's primary consideration is the best interests of the child, it has substantial discretion when placing dependent children. *Antonio P. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 402, 404 ¶ 8 (App. 2008). While placing siblings together is an important consideration, other factors such as stability, security, health, and safety are paramount. *See* Rule 36; *see also Demetrius L.*, 239 Ariz. at 3–4 ¶ 15. The juvenile court found that L.B. would be harmed if Mother's parental rights were not terminated. Further, the record supports that Grandparents intend to coordinate frequent visitation and contact with her siblings. The juvenile court also found that L.B. is in the least restrictive placement. *See* A.R.S. § 8–513(B).

**¶21** Because reasonable evidence supports the factual basis underlying the juvenile court's finding of termination and best interests, the court did not abuse its discretion.

## CONCLUSION

**¶22** For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA