NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

MELINDA BROOKSBY, *Petitioner/Appellee*,

*v.*

BARRY BROOKSBY, *Respondent/Appellant*.

No. 1 CA-CV 24-0509 FC

FILED 07-24-2025

Appeal from the Superior Court in Navajo County
No. S0900DO202300028
The Honorable Michala M. Ruechel, Judge

**AFFIRMED**

COUNSEL

White Mountain Law Group, PLC, Show Low
By Michael R. Ellsworth
*Counsel for Petitioner/Appellee*

Genesis Legal Group, Gilbert
By Ryan P. Claridge
*Counsel for Respondent/Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Michael S. Catlett delivered the decision of the Court, in which Vice Chief Judge David D. Weinzweig joined. Judge Daniel J. Kiley dissented.

---

**C A T L E T T**, Judge:

**¶1** Barry Brooksby ("Husband") appeals the superior court's valuation of a community business. Because there was sufficient evidence supporting the superior court's findings and Husband has not shown the court improperly divided his post-dissolution efforts, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2** Husband and Melinda Brooksby ("Wife") married in 1994. In 2016, Husband formed a limited liability company, now known as Focus Wealth Group, LLC ("FWG"), to sell life insurance. In January 2023, Wife petitioned to dissolve the marriage.

**¶3** Wife asked the court to order a business appraisal for FWG. She asked the court to appoint Derrick Doba ("Doba"), a certified public accountant, to perform a valuation. The court granted that request.

**¶4** Doba interviewed Husband, reviewed FWG's records, and valued FWG as of January 31, 2023. In his valuation report, Doba used two valuation methods—investment value and fair market value. At the dissolution trial, the court admitted Doba's detailed report, which Doba also explained during his testimony.

**¶5** Doba testified that FWG's investment value as of January 31, 2023, was $1.973 million and its fair market value was $1.357 million. Doba described how he calculated FWG's investment value by applying a discounted cash flow method. He concluded that method was appropriate because FWG primarily generated revenue through product sales and revenue varied in past years. Under that method, business value is calculated by "discounting the future stream of projected operating cash flows to its present value at an appropriate rate of return." Ultimately, that method assigns a present value to cashflows and Doba explained it is one way to value a business under the income approach.

**¶6**         Doba began his calculation by looking back at FWG's historic revenue for three years.  He then deducted expenses—including Husband's compensation ("Officer Wages")—from historic revenue.  Based on FWG's adjusted historic revenue, Doba then projected five years of future income.  After accounting for taxes, depreciation, and capital expenditures, he obtained the projected net cash flow for FWG.  Doba further discounted those projected cash flows by a "Present Value Factor" to obtain an estimated investment value of $1.973 million.

**¶7**         To calculate FWG's fair market value, Doba first determined that the appropriate discount rate for FWG's lack of marketability was 31.23%.  He then reduced FWG's investment value by 31.23% to obtain a fair market value of $1.357 million.  Doba testified that FWG's investment value is its value to the marital community while the fair market value represents what FWG is worth "to an unrelated third party in an arm's length transaction[.]"  In this case, Doba believed the investment value was more appropriate because the parties had no intent to sell FWG.

**¶8**         Husband challenged Doba's valuation and testified that FWG was worth $240,000.  He questioned how Doba could value FWG at more than its asset value, which was $140,000.  Doba responded that the difference represented "the good will of the business" which was "attributable from [Husband's] efforts."  He explained the additional value was "personal goodwill" arising from "personal relationships" Husband had with clients.

**¶9**         The court agreed with Doba's investment value approach.  It found there was "goodwill in th[e] business" and valued FWG at $1.973 million.  Husband timely appealed; we have jurisdiction.  *See* A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶10**         Husband argues the court's conclusions about FWG's value and the existence of goodwill were not supported by the evidence and contrary to Arizona law.  He asserts that any goodwill in FWG comes from his efforts and is not divisible. So, despite his own testimony valuing FWG at $240,000, he asks us to "reverse the trial court and remand with instructions to revalue the business at $140,000[.]"  Wife responds that Husband failed to present rebuttal evidence to Doba's valuation and did not argue it was inaccurate or based on unsound accounting principles.

**¶11**         We review the valuation of community assets for an abuse of discretion and consider the evidence in the light most favorable to

upholding the superior court's ruling. *See Helland v. Helland*, 236 Ariz. 197, 201 ¶ 21 (App. 2014); *Gutierrez v. Gutierrez*, 193 Ariz. 343, 346 ¶ 5 (App. 1998). "A court abuses its discretion if it commits an error of law in reaching a discretionary conclusion, it reaches a conclusion without considering the evidence, it commits some other substantial error of law, or the record fails to provide substantial evidence to support the trial court's finding." *Flying Diamond Airpark, L.L.C. v. Meienberg*, 215 Ariz. 44, 50 ¶ 27 (App. 2007) (citation modified). We will not disturb the superior court's factual determinations unless clearly erroneous. *Schickner v. Schickner*, 237 Ariz. 194, 197 ¶ 13 (App. 2015).

**¶12**       The superior court has discretion to rely on various methods to value a business. *Kelsey v. Kelsey*, 186 Ariz. 49, 51 (App. 1996). This court has previously approved of using income-based approaches to value a community business. *See Walsh v. Walsh*, 230 Ariz. 486, 494–95 ¶¶ 26–27 (App. 2012). In *Walsh*, the wife's expert valued the community's interest by normalizing the husband's earnings and multiplying them by a capitalization rate. *Id.* at 489 ¶ 4 n.3 The valuation exceeded the husband's stock redemption interest in the business, so the superior court limited the community's interest to the husband's interest. *Id.* ¶ 4–5. The wife argued the superior court erred. *Id.* at 490 ¶ 10. We agreed, reasoning that the husband possessed goodwill beyond the value of his stock redemption interest and that goodwill was divisible. *Id.* at 494–95 ¶ 26–27.

**¶13**       Courts must, however, avoid conflating goodwill with a spouse's future earning capacity, which cannot be divided. *Id.* at 496 ¶ 26; *see Miller v. Miller*, 140 Ariz. 520, 523 (App. 1984) ("The community is entitled to the services expended by the partners during marriage, not for labor before or after the marriage."). Divisible goodwill exists where "future earning capacity has been enhanced because reputation leads to probable future patronage from *existing and potential* clients[.]" *Molloy v. Molloy*, 158 Ariz. 64, 67 (App. 1988) (emphasis added). Factors relevant in determining whether goodwill exists include "the practitioner's age, health, past earning power, reputation in the community for judgment, skill and knowledge, and his or her comparative professional success." *Wisner v. Wisner*, 129 Ariz. 333, 337–38 (App. 1981). But there is "[n]o rigid and unvarying rule for" determining "the value of goodwill" and "each case must be determined on its own facts and circumstances." *Id.* at 338.

**¶14**       Husband argues Wife offered no evidence of goodwill or reputational value at trial. But Husband's own testimony supported the existence of divisible goodwill. He testified that FWG was worth $240,000, but FWG's assets were worth $140,000. By doing so, Husband implied there

was $100,000 in value exceeding FWG's asset value. That $100,000 is goodwill. *See Walsh*, 230 Ariz. at 491 ¶ 15 (describing the value in excess of husband's stock redemption interest as goodwill); *see also Goodwill*, Merriam-Webster, https://www.merriam-webster.com/dictionary/ goodwill (last visited July 1, 2025) ("[T]he excess of the purchase price of a company over its book value which represents the value of goodwill as an intangible asset for accounting purposes[.]"); *Goodwill*, Black's Law Dictionary (12th ed. 2024) ("[T]he ability to earn income in excess of the income that would be expected from the business viewed as a mere collection of assets."). Doba similarly testified there was goodwill in FWG and explained that it derived from Husband's "personal relationships" with clients. The record supports that FWG had goodwill.

**¶15** Husband also argues that dividing FWG's goodwill violated Arizona law. He contends that any goodwill comes from his own earning capacity and is not a divisible community asset. We are not persuaded.

**¶16** Doba's valuation "normalized" FWG's historic revenue dating back three years. That calculation subtracted Husband's reasonable future salary (i.e., his personal earnings) from the projected revenues. Doba therefore excluded any value attributable to Husband's postmarital efforts when calculating the company's goodwill. *Walsh*, 230 Ariz. at 495 (explaining the value of spouse's future income must be excluded from the community property valuation); *see also In re Marriage of Duncan*, 90 Cal. App. 4th 617, 620 (2001) (reasoning that because "the court valued the business without including any potential or continuing income to the husband," his future earning capacity "was not implicated"); *May v. May*, 589 S.E.2d 536, 402 (W. Va. 2003) ("Any legitimate method of valuation that measures the present value of goodwill by taking into account past results, and not the postmarital efforts of the professional spouse, is a proper method of valuing goodwill." (citation omitted)).

**¶17** This is not to suggest there is no potential for income-based approaches to unlawfully divide a spouse's post-dissolution efforts. We heed that risk. But here, Husband has not shown that his post-dissolution efforts were improperly considered. Instead, Husband's future salary was excluded from FWG's projected cashflows and thus excluded from and reducing the resulting valuation. And Doba's testimony that "all of the good will of the business is attributable from [Husband's] efforts" is not an admission that wins the day. Because Husband's efforts occurred during the marriage, the resulting goodwill is a divisible community asset. *See Gerow v. Covill*, 192 Ariz. 9, 15 ¶ 26 (1998) ("[T]he 'goodwill' developed in connection with Husband's sole proprietorship during the marriage is

considered a community asset."). Under community property principles, Wife also contributed to FWG's goodwill during the marriage and is entitled to division of it. *See Mitchell v. Mitchell*, 152 Ariz. 317, 320 (1987).

¶18            Finally, neither party requested factual findings under Arizona Rule of Family Law Procedure ("Rule") 82(a)(1). When factual findings are not requested, we presume the superior court "found every fact necessary to support its decision." *Whitt v. Meza*, 257 Ariz. 176, 180 ¶ 8 (App. 2024). Applied here, we presume the court found every fact necessary to support its finding about FWG's value, including that Doba's valuation considered only Husband's efforts during the marriage. Again, the record supports that Husband's pre-dissolution efforts resulted in goodwill—Husband admitted FWG was worth $100,000 more than its asset value and Doba testified that the goodwill came from Husband's "personal relationships" with clients. Husband objects to the amount of goodwill, not the existence of it. But Doba's report and testimony provided sufficient support for the trial court's finding that FWG was worth $1.973 million, not $240,000. *See Mitchell*, 152 Ariz. at 323 (explaining that although "more precise findings are preferable[,]" this court will affirm if "the valuation was reasonably supported in the record by expert testimony"). The superior court did not abuse its discretion.

## CONCLUSION

¶19            We affirm.

**K I L E Y**, J., dissenting:

¶20        I respectfully dissent.

¶21        As the Majority correctly notes, the goodwill of a business owned by the marital community is "a community asset" subject to division "upon marital dissolution." *Molloy v. Molloy*, 158 Ariz. 64, 67 (App. 1988). But a spouse's post-dissolution earnings are separate property, *see* A.R.S. § 25-213(B), and a court dividing marital assets must not conflate the goodwill of a community-owned business with a spouse's future earning capacity, *Molloy*, 158 Ariz. at 67 ("Future earning capacity *per se* is not goodwill." (quotation omitted)); *see Walsh v. Walsh*, 230 Ariz. 486, 495, ¶ 27 (App. 2012) (holding that when dividing the value of a professional practice, including its goodwill, "a court must ensure that it does not divide[,] as community property[,] future earnings which are based solely on the professional's post-dissolution work effort").

¶22        Here, expert witness Derrick Doba ("Doba") testified that he valued Focus Wealth Group, LLC ("FWG") at $1,973,000, a figure he arrived at by using FWG's historical earnings for the preceding three years to project its future earnings for the next five years and then calculating the present value of that sum. His alternative valuation figure of $1,357,000, he went on, was calculated by applying a discount rate of 31.23% to $1,973,000 to account for FWG's "lack of marketability."

¶23        And Doba made clear that the vast majority of FWG's value was attributable to its goodwill. He opined that FWG had "very little" by way of tangible and intangible assets, identifying them as "a bank account with $136,000 in cash" and "some small office equipment" worth "about $3,400." After subtracting those sums, Doba testified, "the remainder" of FWG's value "would be deemed goodwill." When asked whether "all of the goodwill of the business" was "attributable" to the "efforts" of FWG's principal, Barry Brooksby ("Husband"), Doba answered, "Yes, that's correct."

¶24        By his own admission, Doba made no attempt to determine whether any part of FWG's value was attributable to residual income from insurance policies sold during the marriage, or to anticipated income from new clients referred by existing clients or by other professionals with whom Husband had built a relationship during the marriage. Doba made no attempt, in other words, to determine what portion of FWG's goodwill, if any, was attributable to Husband's labors during the marriage. *Cf. Gerow v. Covill*, 192 Ariz. 9, 15-16, ¶¶ 26-29 (App. 1998) (holding that "the revenue-

producing clients" of community business that "were developed through Husband's previous clientele and associations acquired during the marriage" were a community asset). On the contrary, Doba testified that he did not consider it "relevant" whether Husband "gets his clients from a referral base" developed during the marriage "or whether he gets [new clients] from new marketing that's on his own."

¶25 In my view, Doba's testimony makes clear that his valuation of FWG conflated the business's goodwill with the earnings that Doba expected Husband to generate from his post-dissolution labor. This is an improper method of valuing goodwill. *See Walsh*, 230 Ariz. at 495, ¶ 27 ("[W]hen [a] professional continues to practice after [a] divorce, the professional may realize value as a direct result of his or her future efforts. That value is nothing more than future income, and cannot be divided."). Because Doba's $1,973,000 valuation of FWG was improperly based on Husband's future work efforts, the trial court erred in accepting Doba's valuation. *See id.; see also Miller v. Miller*, 140 Ariz. 520, 523 (App. 1984) ("The community is entitled to the services expended by the partners during marriage, not for labor before or after the marriage." (citation omitted)); *accord In re Marriage of Duncan*, 90 Cal. App. 4th 617, 633-34 (Cal. Ct. App. 2001) ("The court may not value business goodwill by any method that takes into account the postmarital efforts of either spouse." (citation modified)); *In re Marriage of King*, 150 Cal. App. 3d 304, 310 (Cal. Ct. App. 1983) (vacating trial court's valuation of consulting business that husband established during the marriage because the valuation "was based upon an incorrect method" of calculating goodwill "which took into consideration [husband's] postseparation efforts").

¶26 Because Doba's alternative $1,357,000 valuation was calculated by reference to the erroneously-calculated $1,973,000 figure, his alternative valuation, too, is erroneous.

¶27 Although Melinda Brooksby ("Wife") testified that she found Doba's $1,973,000 valuation to be "very accurate and fair," she offered no independent opinion about the value of FWG.

¶28 Husband testified that FWG's value was $240,000. His testimony constitutes competent evidence of FWG's value. *See City of Tucson v. Tanno*, 245 Ariz. 488, 493, ¶ 18 (App. 2018) ("In Arizona, a property owner may always testify about the value of his or her property because an owner of property has, by definition, knowledge of the components of value that are useful in ascertaining value." (citation modified)). And because Husband's opinion constitutes the *only* competent evidence in the

record of FWG's value, I would remand with directions to amend the dissolution decree to value FWG at $240,000 and to award Wife her one-half interest in that asset.[1]



---

[1] Modifying the dissolution decree's property award in this manner may, of course, warrant an upward modification of Wife's spousal maintenance award under Arizona Rule of Family Law Procedure 91.1(a). *See* A.R.S. § 25-319(B)(9) (noting that, in determining the amount and duration of maintenance award, the court should consider, *inter alia*, "[t]he financial resources of the party seeking maintenance, including marital property apportioned to that spouse").